IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 4, 2012 Session

## STATE OF TENNESSEE v. JEREME DANNUEL LITTLE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Hamilton County**
**No. 253374      Rebecca J. Stern, Judge**

_____

**No. E2009-01796-SC-R11-CD - Filed March 22, 2013**

_____

The defendant was charged with two counts of aggravated robbery and one count of especially aggravated kidnapping. At the conclusion of the proof, the trial court granted the defendant's motion for a judgment of acquittal on the robbery charges. The jury found the defendant guilty of especially aggravated kidnapping, for which he received an eighteen-year sentence. On appeal, the defendant alleged that the trial court erred by failing to inform the jury that he had been acquitted of the robbery charges, by prohibiting defense counsel from mentioning the acquittals in closing argument, and by allowing the State to refer to the robbery during its closing argument. The defendant also alleged that the trial court committed error during jury instructions and that the cumulative errors denied him a fair trial. The Court of Criminal Appeals affirmed the conviction. We affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal
Appeals Affirmed**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Jeffrey S. Schaarschmidt, Chattanooga, Tennessee, for the appellant, Jereme Dannuel Little.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; John H. Bledsoe, Senior Counsel (on appeal before the Supreme Court); Renee W. Turner, Senior Counsel (on appeal before the Court of Criminal Appeals); William H. Cox, III, District Attorney General; and Boyd M. Patterson, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Facts and Procedural History

On July 10, 1998, a robbery took place at the Hamilton County residence of Chris Rogers. Over the next seven years, the robbery remained unsolved. In September of 2004, Detective Bill Phillips of the Chattanooga Police Department, who had been assigned to investigate cold cases, received a telephone call from a confidential informant, which led him to further investigate the 1998 robbery. In an interview of Rogers, Detective Phillips learned that the original incident report of the robbery was largely consistent with the information provided by the confidential informant. In early 2005, Detective Phillips interviewed Demetrius Grayson, who confessed to the 1998 robbery and implicated Jereme Little (the "Defendant") as his accomplice. Grayson also claimed that the Defendant had kidnapped and tortured him after the commission of the robbery. The Defendant was eventually charged with two counts of the aggravated robbery of the Rogers residence, and one count of the especially aggravated kidnapping of Grayson.

At trial, Rogers testified that at approximately 1:00 a.m. on July 10, 1998, a man knocked on his door and asked to speak with his son, Bruce Jackson, who was asleep in the other room. Afterward, two men entered Rogers' home and demanded "the dope and the money." When Rogers told the men that he did not have any drugs or money, the men searched the residence. One held Rogers at gunpoint while the other gathered jewelry and several items from a bedroom dresser. Rogers was forced to lie down in the bathtub, and a blanket was placed over his head. Jackson was ordered to lie next to the bathtub for ten to fifteen minutes. When the two men left, Rogers called 911 to report the robbery. He could not identify either of the two robbers.

Jackson identified the robber who had knocked on Rogers' door as Grayson, explaining that he had gone to school with Grayson and knew his brother.[1] He recalled that after Grayson had asked to use the phone and was given a glass of water, a second man entered the residence with a shirt pulled over his face. At that point, Grayson placed a gun to Jackson's head and demanded jewelry and money while the unidentified robber, also armed, demanded the same from Rogers. When the robbers asked for drugs, Jackson insisted they had none. Although Jackson identified Grayson, he could not identify the Defendant as the second robber, even though he had known the Defendant during his youth. On cross-examination, Jackson testified that he did not believe the Defendant was the second robber because the body types and tones of voice did not match.

---

[1] When the police conducted their initial investigation, Jackson identified one of the robbers as a friend, but it is unclear why Jackson did not identify Grayson by his name at that time.

Grayson, who admitted to having a lengthy criminal record, was in custody for his role in the robbery at the time of the trial. A witness for the State, he contended that the Defendant had the idea to rob the Rogers residence because he thought it was a "dope house." Grayson testified that he and the Defendant watched "constant[] in and out traffic" over a period of weeks before making their plans. He recalled that on the night of the robbery, he rang the doorbell, asked Rogers if he could speak with Jackson, and, when Jackson brought Grayson a glass of water, the Defendant "stepped inside the house" with "his shirt on his face." Both Grayson and the Defendant possessed guns during the robbery. According to Grayson, when Rogers and Jackson claimed that there was no money or drugs in the house, he ordered Jackson to the floor while the Defendant ordered Rogers to the floor. At that point, the Defendant tied Rogers with a phone cord and remarked, "[S]omebody going to get busted tonight." Grayson testified that he interpreted the statement to mean that the Defendant intended to shoot someone if there were no money or drugs, and, when he saw the Defendant take a blanket and escort Rogers to the bathroom, he ran from the house, explaining that he wanted no "part of a murder, if there was going to be one."

Grayson claimed that he tossed his gun away as he ran and attempted to use his cell phone but could not get in touch with anyone. When he arrived at a grocery in East Chattanooga, he encountered the Defendant, who called out from his car, threatening to shoot Grayson if he tried to run. Grayson testified that the Defendant then drove him "to a crack house on Davenport" (the "Davenport house")[2] and "pistol whipped" him "once or twice." He claimed that the Defendant tied him to a chair "in front of a couple of other guys and tortured [him] for a couple of hours," demanding to know why he had fled from the scene of the robbery. According to Grayson, the Defendant forced him to "smoke some crack" and "eat dog feces" during the ordeal. He contended that after a couple of hours, he escaped the house by jumping from a window. Grayson acknowledged that he was incarcerated for an unrelated aggravated robbery and a probation violation when he confessed to Detective Phillips that he had participated in the 1998 robbery.

On cross-examination, Grayson stated that the Davenport house where he had been tied up and tortured by the Defendant was rented by Lewis and Gabriel Buchanan (the "Buchanan brothers") in the name of an unknown "junkie." Grayson, who had known the Buchanan brothers since childhood, testified that they let him stay at the house when he did

_____

[2] There is conflicting testimony in the record as to the exact location of the house where the Defendant took Grayson. Grayson testified that the house was on Davenport Street, Detective Phillips initially reported the location as 2209 Wheeler Avenue, two defense witnesses testified that the house was located at 2207 Wheeler Avenue, and several witnesses could only give a general location within the neighborhood. The record indicates that the parties eventually agreed that the address of the house was 2207 Wheeler Avenue and that Davenport Street may have been the street behind the house.

not have anywhere else to go. Grayson testified that he, the Defendant, the Buchanan brothers, and "a few other guys" stayed at the house "off and on," claiming that they all used the house to deal in crack cocaine. Grayson stated that the Buchanan brothers were present after he was tied up by the Defendant and that even though "there were other people walking in and out," no one offered assistance or called the police.

Kelvin Ellison, who had a lengthy criminal record, was incarcerated in federal prison for a probation violation and an attempted aggravated robbery at the time of the trial. Also called as a witness for the State, he testified that sometime in early 2005, while he was incarcerated for other federal crimes, he was interviewed by Detective Phillips about the 1998 robbery. During the interview, portions of which were played on audiotape for the jury, Ellison recalled that in the summer of 1998 he had gone to the Davenport house to see one of the Buchanan brothers and, while he was there, saw "the dude . . . getting whooped." According to Ellison, "they were beating him, had the dog . . . stuff." Ellison testified that he told Detective Phillips that the Defendant, who was in the room where "the dude" was tied to a chair, was responsible for the beating. He also told Detective Phillips that "the dude" had dog feces "around his mouth and all on his clothes," and that he thought the reason for the beating had something to do with money or someone running off with something. At trial, Ellison repeated the statement he had made to Detective Phillips in 2005 and identified Grayson as "the dude" he saw tied to the chair. He remembered that the Defendant was complaining loudly about "people running off on him and messing him over."

Terna Hatten, who at the time of trial was incarcerated for aggravated assault and had previously been incarcerated with Ellison in the Hamilton County Jail, testified on behalf of the defense. He claimed that Ellison had approached him while they were in jail and asked him to testify falsely against the Defendant to the effect that the Defendant had "robbed [Grayson] and kidnapped him and supposedly made him eat dog doo doo or some old thing like that." Hatten further testified that during their conversation, Ellison had admitted that an individual called "Two-Hype" had actually committed both the robbery and the kidnapping.[3] Hatten stated that although he had informed Ellison he would "get back with him and let him know if [he] was wil[l]ing to cooperate," he chose not to do so because "it[ was] a lie" and he did not want to send someone "to prison for a tremendous amount of time for something he didn't do." When asked on cross-examination if he had connections to particular gang activity, Hatten denied his involvement. The State later introduced rebuttal testimony challenging Hatten's credibility.

---

[3] Although Hatten did not know the real name of the individual referred to as "Two-Hype," testimony from other witnesses established that "Two-Hype" was Lewis Buchanan.

Lesley Allen, who had a lengthy criminal history and was incarcerated at the time of the trial, also testified for the Defendant. He claimed that he had learned about the kidnapping incident from Grayson, who was his cousin. According to Allen, Grayson had claimed that "Two-Hype" kidnapped him, took him back to a house, and made him smoke crack and eat dog feces. On cross-examination, Allen admitted that during his incarceration he was placed in a cell near an area where the Defendant was being held in isolation. The State attempted to elicit testimony from Allen that he had previously told law enforcement officers that the Defendant was the one who "held a gun to [Grayson's] head, forced him to eat dog feces and forc[ed] him to smoke crack," but Allen continued to insist at trial that Grayson had stated that "Two-Hype" committed the offenses. The State later introduced rebuttal testimony attacking Allen's credibility.

Johnny Carter, also a defense witness, testified that during the summer of 1998 he resided at the Davenport "crack house," where he was allowed to stay without paying rent because he was a "customer." Carter claimed that the Buchanan brothers and Grayson also resided at the Davenport house, but insisted that the Defendant did not. Carter stated that he would have been surprised to see the Defendant at the Davenport house because "he wasn't from that side of town." He also contended that he had overheard Grayson and the Buchanan brothers express a desire to kill the Defendant. According to Carter, Grayson and the Buchanan brothers, during the summer of 1998, became involved in a heated argument after Grayson took three ounces of crack cocaine from them. Although he left the house before he witnessed anything, Carter speculated that the Buchanan brothers, who were "capable of hurting" people, probably "beat [Grayson] down."

Officer Gene Planer, a corrections deputy who worked for the Hamilton County Jail while Ellison and the Defendant were both incarcerated there, was called as a defense witness. He testified that on one occasion during visitation hours, Ellison became irate, yelled profanities, and threatened to kill the Defendant when he entered the room. According to the officer, the Defendant had not done anything to provoke Ellison. As a result of the incident, Officer Planer prepared a disciplinary report against Ellison for threatening the Defendant and using profanity.

The Defendant testified that he had merely "glanced at [Ellison] and looked the other way," but had not done anything to provoke Ellison's outburst at the Hamilton County Jail. He denied committing the 1998 robbery and claimed that he had never been to the Davenport house where Grayson's kidnapping took place. According to the Defendant, the Buchanan brothers and Grayson wanted to kill him because he wore "the wrong color [shirt] in the wrong place," referring to their separate neighborhoods and possible gang affiliations. The Defendant, who grew up on "the south side," testified that if he had gone to the Davenport house, which was on "the east side," and tied Grayson to a chair or made him smoke crack

cocaine and eat dog feces, and the Buchanan brothers had been there to witness the events, they would have killed the Defendant or members of his family.

At the conclusion of the defense proof, in a jury-out hearing, the trial court granted the Defendant's motion for a judgment of acquittal on the two aggravated robbery charges on the basis that Grayson was an accomplice in the 1998 robbery and that the State had not provided the requisite corroboration of his testimony. Although there was testimony that later connected Grayson and the Defendant to the Davenport house, the trial court considered the testimony to be "after the fact" and not corroborative of the robbery itself. When the trial court ruled that only the especially aggravated kidnapping charge would be submitted to the jury, the State expressed its intention to refer to the testimony surrounding the 1998 robbery during closing argument because the robbery had led to the kidnapping. Defense counsel objected, arguing that the "problem is that the motive . . . for the alleged kidnapping is this alleged robbery." The trial court overruled the objection, permitted the State to refer to the 1998 robbery during closing argument, and instructed defense counsel not to mention the acquittals during closing argument.

As to the two counts of aggravated robbery, the trial court instructed the jury as follows: "I have removed these counts under this indictment from your consideration. You are not to concern yourself with this or to speculate as to the reason why." In another jury-out hearing, defense counsel objected to this instruction and asked that the jury be told that the State had not met the legal standard for accomplice corroboration. The trial court refused to provide the explanation sought and chose to provide instructions as to especially aggravated kidnapping, its lesser-included offenses, and criminal responsibility. Defense counsel did not request, nor did the trial court provide, any limiting instruction as to the purpose of the evidence related to the robbery charges. The jury returned a verdict of guilt for especially aggravated kidnapping, and, later, the trial court imposed an eighteen-year sentence.

On appeal, the Defendant contended that the trial court erred, first by failing to inform the jury that he had been acquitted of the aggravated robbery charges; second, by prohibiting defense counsel from mentioning the acquittals in closing argument; and third, by allowing the State to refer to the 1998 robbery during its closing argument. The Defendant also asserted that the trial court committed reversible error by its refusal to inform the jury of the requirement of corroboration for accomplice testimony, and by providing instructions to the jury as to criminal responsibility. As his final claim, the Defendant argued that the cumulative errors denied him a fair trial. The Court of Criminal Appeals affirmed the conviction, holding that any error by the trial court had no effect on the verdict. State v. Little, No. E2009-01796-CCA-R3-CD, 2012 WL 8718, at *11 (Tenn. Crim. App. Jan. 3, 2012). While acknowledging the decision in State v. Holman, 611 S.W.2d 411 (Tenn. 1981),

-6-

which disallowed evidence—tending to show common scheme or plan—of a prior charge in a subsequent trial with similar facts because Holman had been acquitted of the prior charge, the Court of Criminal Appeals held that the Defendant's "contemporaneous acquittal" of the robbery charges did not preclude the use of the testimony about the 1998 robbery to establish the Defendant's motive for the kidnapping of Grayson. Little, 2012 WL 8718, at *9-10 ("Assuming for purposes of argument that a partial acquittal in a joint trial even has the same effect as a prior acquittal for purposes of applying Holman, we are unpersuaded that the evidence of motive should be viewed as improper in the present case.").

## II. Analysis

We granted the Defendant's application for permission to appeal to consider whether the trial court erred by failing to inform the jury that it had acquitted the Defendant of two of the three criminal charges for which he had been indicted. The Defendant urges us to either apply the rule from Holman or adopt the rule followed in Rhode Island, which allows the introduction of evidence of a prior charge for which a defendant was acquitted but requires the trial court to inform the jury of the acquittal. See State v. Andujar, 899 A.2d 1209, 1219-22 (R.I. 2006); State v. Bernier, 491 A.2d 1000, 1005-06 (R.I. 1985). In response, the State submits that because acquittals based on insufficient corroboration of an accomplice's testimony are not the equivalent of acquittals based on a not guilty verdict, the trial court was not required to inform the jury that a judgment of acquittal had been entered on the robbery charges.

## A. Preliminary Considerations

The Court of Criminal Appeals properly observed that because the Defendant did not seek separate trials for the robbery charges and the kidnapping charge, whether the charges should have been severed is not at issue. Little, 2012 WL 8718, at *6; see Tenn. R. Crim. P. 13, 14. At oral argument, defense counsel explained that because the trial court surely would have denied a motion to sever, none was filed. For years, this Court has consistently held that the prejudicial effect of other crimes evidence typically warrants a severance. See, e.g., State v. Dotson, 254 S.W.3d 378, 387-89 (Tenn. 2008); Spicer v. State, 12 S.W.3d 438, 446-47 (Tenn. 2000); State v. Moore, 6 S.W.3d 235, 239-40 (Tenn. 1999). Our rules of procedure require trial courts to carefully consider the risk of prejudice in proceedings involving multiple charges. See Tenn. R. Crim. P. 14(b)(1) (providing that when offenses involve permissive joinder, "the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan"); Tenn. R. Crim. P. 14(b)(2)(A) (providing that when offenses involve mandatory joinder, "the court shall grant a severance of offenses . . . when the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense" (emphasis added)). Notwithstanding the Defendant's failure to request a severance of offenses prior to trial, the court did, after the close of the proof, grant the Defendant a judgment of acquittal as to the robbery charges,

which essentially resulted in a severance of the offenses at that time. Even then, however, the Defendant did not move to strike the evidence related to the robbery charges.[4] As noted by the Court of Criminal Appeals, after the trial court entered the judgments of acquittal, the Defendant "could have, and should have, moved to strike any evidence related to the robber[y]." Little, 2012 WL 8718, at *6. In any event, because he failed to seek a severance or move to strike, the Defendant now cannot complain of the introduction of proof related to the robbery charges.

Similarly, the Defendant may not now complain that the trial court, after granting the judgments of acquittal, failed to provide limiting instructions as to the proof related to the robbery charges. Although evidence of other crimes, wrongs, or acts is not admissible to establish a defendant's propensity to commit the crime for which he or she is on trial, there are exceptions to this general rule. See Tenn. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes."). Under certain circumstances, proof of other crimes may be admissible to establish motive, intent, identity, absence of mistake, or common plan or scheme. See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). Moreover, this Court has expanded the list of exceptions to include a limited amount of other crimes evidence when necessary to provide a "contextual background." See State v. Gilliland, 22 S.W.3d 266, 271 & n.6 (Tenn. 2000) (noting that if evidence of a prior crime is relevant to an issue other than character and is not unduly prejudicial, the evidence may be admissible to "paint a picture" of the events leading up to the charged offense).

Upon request, the trial court should conduct a jury-out hearing to determine whether evidence of other crimes is admissible under Rule 404(b). Even when such evidence is admissible, however, trial courts should, when asked to do so, "restrict the evidence to its proper scope and instruct the jury accordingly." Tenn. R. Evid. 105; see also State v. Howell, 868 S.W.2d 238, 255 (Tenn. 1993) ("[L]imiting instructions are critical in preventing the improper and prejudicial use of proof of other crimes."). In this instance, because the robbery and kidnapping charges were consolidated at the joint trial, the trial court did not conduct a Rule 404(b) hearing. Nevertheless, the Defendant, after being acquitted of the robbery charges, could have requested an instruction limiting the jury's consideration of the evidence of the 1998 robbery to either motive or contextual background. Instead, the Defendant simply objected to any argument by the State that "the motive for the alleged

_____

[4] See Tenn. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context.").

kidnapping [wa]s th[e] alleged robbery." The blame for the failure to either seek a limiting instruction or present the issue in his motion for a new trial "must be laid at the [D]efendant's feet." Laird v. State, 565 S.W.2d 38, 40 (Tenn. Crim. App. 1978); see also Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial.").[5]

In summary, the Defendant had the opportunity to either soften or altogether avoid the potential prejudice associated with other crimes evidence, but did not do so. Instead, the Defendant "*took the [road] less traveled by, [a]nd that has made all the difference*." Robert Frost, The Road Not Taken, in Mountain Interval 9, 9 (1916).

### B. Evidence of the Acquittals

The Defendant contends that the trial court erred by failing to inform the jury of his acquittals on the robbery charges, by prohibiting the Defendant from making reference to the acquittals during closing argument, and by allowing the State to refer to the 1998 robbery during its final argument. The core issue, however, is whether the trial court erred by failing to inform the jury that the Defendant had been acquitted of the robbery charges.

Rule 29 of the Tennessee Rules of Criminal Procedure provides as follows:

> Grounds for Judgment of Acquittal—On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Tenn. R. Crim. P. 29(b). "This rule empowers the trial judge to direct a judgment of acquittal when the evidence is insufficient to warrant a conviction either at the time the [S]tate rests or at the conclusion of all the evidence." State v. James, 315 S.W.3d 440, 455 (Tenn. 2010) (citing Overturf v. State, 571 S.W.2d 837, 839 & n.2 (Tenn. 1978)). When a motion for a judgment of acquittal is made at the conclusion of the State's evidence and is not granted, "the defendant may offer evidence without having reserved the right to do so." Tenn. R. Crim. P. 29(c). When the motion is made at the conclusion of all the evidence, the trial court may render its decision on the motion before the jury returns a verdict, after the jury returns a verdict, or after the jury is discharged without having returned a verdict. Tenn. R. Crim. P. 29(d). "At the point the motion is made, the trial court must favor the opponent of the

---

[5] Although the Defendant filed two motions for a judgment of acquittal or a new trial, neither motion included as grounds for relief the trial court's failure to provide a limiting instruction.

motion with the strongest legitimate view of the evidence, including all reasonable inferences, and discard any countervailing evidence." James, 315 S.W.3d at 455 (citing Hill v. State, 470 S.W.2d 853, 858 (Tenn. Crim. App. 1971)).

The standard by which the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction. State v. Ball, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); State v. Anderson, 880 S.W.2d 720, 726 (Tenn. Crim. App. 1994). That is, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). A trial court's determination of a motion for a judgment of acquittal raises a question of law. State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). In resolving this question, the trial court's only concern is the legal sufficiency of the evidence. Id.

Evidence is insufficient to sustain a conviction if it is solely based upon the uncorroborated testimony of accomplices. Sherrill v. State, 321 S.W.2d 811, 814-15 (Tenn. 1959); Prince v. State, 529 S.W.2d 729, 732 (Tenn. Crim. App. 1975). An accomplice is defined as a person who knowingly, voluntarily, and with common intent with the principal unites in the commission of a crime. Clapp v. State, 30 S.W. 214, 216 (Tenn. 1895); Letner v. State, 512 S.W.2d 643, 647 (Tenn. Crim. App. 1974). The rule is that there must be some fact testified to which is entirely independent of an accomplice's testimony; that fact, taken by itself, must lead to an inference that a crime has been committed and that the defendant is responsible therefor. State v. Fowler, 373 S.W.2d 460, 463 (Tenn. 1963); see also Hawkins v. State, 469 S.W.2d 515, 520 (Tenn. Crim. App. 1971) ("[I]ndependent corroborative testimony must also include some fact establishing the defendant's identity."). This requirement is met if the corroborative evidence fairly and legitimately tends to connect the accused with the commission of the crime charged. Marshall v. State, 497 S.W.2d 761, 765-66 (Tenn. Crim. App. 1973). Only slight circumstances are required to furnish the necessary corroboration. Garton v. State, 332 S.W.2d 169, 175 (Tenn. 1960). To be corroborative, the evidence need not be adequate in and of itself to convict. See Conner v. State, 531 S.W.2d 119, 125 (Tenn. Crim. App. 1975).

Because the proof established that Grayson was an accomplice in the 1998 robbery, the State was required to introduce corroborative evidence of his testimony, as the two victims of the robbery could not identify the Defendant. Because no other evidence connected the Defendant to the 1998 robbery, the trial court properly granted the Defendant's motion for a judgment of acquittal as to the robbery charges. Afterward, the trial court refused to permit any reference to the acquittals, instructing the jury to disregard the robbery charges, but allowing the State to argue that Grayson's flight from the scene of the robbery

-10-

could be considered as the Defendant's motive for the kidnapping.

The Defendant first argues that we should apply the holding in State v. Holman, 611 S.W.2d 411 (Tenn. 1981), to the circumstances of this case. In Holman, which involved theft of a watch, the trial court permitted the State to introduce evidence that Holman had previously stolen a watch from another victim under similar circumstances, but did not permit Holman to introduce proof that he had been tried and acquitted of that crime. Id. at 412. This Court reversed, broadly holding that "evidence that [Holman] committed an alleged crime other than that for which he is on trial should not be admitted when he has been acquitted of such alleged other crime." Id. at 413 (emphasis added) ("[I]f [a] defendant has been acquitted of the alleged prior crime, proposed evidence that he committed such prior crime should not be admitted."). More recently, our Court of Criminal Appeals described the Holman rule as follows: "[E]vidence of a crime for which the defendant was acquitted can never be admissible as evidence of a prior crime in a trial, despite its relevance on issues other than propensity." State v. Shropshire, 45 S.W.3d 64, 75-76 (Tenn. Crim. App. 2000).

As stated, the evidence of the Defendant's participation in the robbery was presented as part of the consolidated charges and, as such, was not evidence of "an alleged crime other than that for which [the Defendant] [wa]s on trial." According to the Defendant, however, application of "[t]he *Holman* rule in this . . . situation would have prevented the State from arguing the [Defendant] had committed the aggravated robberies, and acted as [an appropriate safeguard] against the State using unfairly prejudicial prior bad acts." We disagree. We need not apply Holman to determine whether the trial court, in this instance, erred by failing to inform the jury that the Defendant had been acquitted of the robbery charges. In Holman, the prior crime evidence was offered at a subsequent trial on a separate charge, under what today would be governed by Rule 404(b) of the Tennessee Rules of Evidence. These circumstances are different. Here, the evidence was properly admitted in a joint trial. After the Defendant was acquitted of the robbery charges, he did not move to strike the evidence of the robbery pursuant to Tennessee Rule of Evidence 103(a)(1), nor did he ask the trial court to apply the standards of Tennessee Rule of Evidence 404(b) to determine whether the State would be allowed to argue the facts of the 1998 robbery to show motive for the kidnapping. In consequence, our primary concern is whether the trial court erred by failing to inform the jury that the Defendant was acquitted of the robbery charges after the evidence of the robbery had already been admitted in a trial involving consolidated charges.

As observed by the Court of Criminal Appeals, the rule established in Holman was not designed to apply to "a partial acquittal in a joint trial." See Little, 2012 WL 8718, at *9-10. First, because the Defendant did not seek a severance of the charges in this instance, the trial court did not have the opportunity to address Tennessee Rule of Evidence 404(b). As

a result, we are not faced with prior crime evidence that could have been excluded prior to the commencement of this trial based on the fact of a prior acquittal. Second, the Court in Holman addressed the introduction of evidence of a prior crime for which a defendant had been acquitted after the State failed to prove guilt beyond a reasonable doubt. Holman, 611 S.W.2d at 413; see Shropshire, 45 S.W.3d at 75 n.7 (questioning the applicability of the Holman rule depending upon the reason for the acquittal).[6] Finally, the issue of whether a jury should be informed that a defendant has been acquitted of an offense for which he or she is on trial, after the jury has already heard evidence of the offense as part of the consolidated trial, is one of first impression in Tennessee.

As an alternative to Holman, the Defendant urges us to adopt the rule followed in Rhode Island, which allows the introduction of evidence of a charge for which a defendant was acquitted but requires the trial court to inform the jury of the acquittal. See State v. Andujar, 899 A.2d 1209, 1219-22 (R.I. 2006); State v. Bernier, 491 A.2d 1000, 1005-06 (R.I. 1985). Like the holding in Holman, however, the Rhode Island rule has been applied in the context of whether evidence of a prior crime for which the defendant has been acquitted is admissible in a subsequent trial on other charges. Andujar, 899 A.2d at 1219; Bernier, 491 A.2d at 1005. Thus, the Rhode Island rule is simply a different approach to the same problem that was considered in Holman. While we recognize that the holding in Holman represents a minority rule among the states,[7] we choose not to revisit Holman until the issue

_____

[6] In a recent opinion, the United States Supreme Court held that, for purposes of double jeopardy, a mid-trial acquittal granted by the state trial court, based on a "misconstruction" of a statute, precluded retrial of the defendant even though the trial court's basis for the acquittal was erroneous. Evans v. Michigan, No. 11-1327, 2013 WL 610197, at *3 (U.S. Feb. 20, 2013). In that case, while treating bench acquittals the same as jury acquittals for double jeopardy purposes, the Court did not address the issue that was presented in Holman—what effect a prior acquittal based on a jury verdict of not guilty may have on the admission of the prior crime evidence in a subsequent trial of similar charges—or the issue that is now before us—whether the fact of a partial, mid-trial acquittal by the trial court, based on the State's failure to corroborate accomplice testimony, should be communicated to the jury during the consolidated trial of the remaining charges. Here we are not faced with the preclusive effect of acquittals in the context of a double jeopardy analysis, and the question of whether different types of acquittals may have different effects on the admission of prior crime evidence remains undecided. We simply note that neither the Holman rule nor the Evans rule is applicable to the circumstances of this case.

[7] See Shropshire, 45 S.W.3d at 76 n.8 (citing Holman, 611 S.W.2d at 413 (Fones, J., dissenting)). Many jurisdictions have considered whether evidence of a prior crime is admissible at a subsequent trial even though the defendant was acquitted of the prior crime, and, if such evidence is admissible, whether the defendant is permitted to inform the jury of the prior acquittal. Our research indicates that three states and some federal circuit courts have held that the prosecution may introduce evidence of other crimes, but the defendant is not permitted to offer proof of his acquittal of such crimes. Three states and most federal circuit courts have held that while evidence of a prior crime is admissible, the defendant may or may not be allowed

(continued...)

is squarely before us.

The only question that must be resolved in this instance is whether, in a trial involving multiple charges, a jury should be informed that a defendant has been acquitted of some but not all of the charges, after the proof of a dismissed charge or charges has already been presented to the jury. Our reasoning in State v. Turner, 352 S.W.3d 425 (Tenn. 2011), is instructive. Turner, who had been indicted for first degree murder, argued at his trial that two other men, who previously had been tried and acquitted of the same murder, had actually committed the crime. Id. at 426. Turner filed a motion in limine to prevent the State from introducing evidence of the prior acquittals of the other men, arguing that the acquittal evidence "was irrelevant because a finding of 'not guilty' indicates only that the State did not meet its burden of proof, not that [the other two men] were innocent of the charges." Id. at 427. After the trial court denied the motion, thereby permitting the State to present evidence that the previous defendants had been acquitted, the jury convicted Turner of facilitation of murder. Id. On appeal, the Court of Criminal Appeals reversed, holding that the evidence of the acquittals was irrelevant. Id. at 428. After concluding that the acquittals did not make it more or less probable that the other men committed the murder, we affirmed, explaining that "[a]n acquittal is not evidence of innocence but rather evidence of the failure of the State to prove guilt of a defendant beyond a reasonable doubt." Id. at 430 (citing Tenn. R. Evid. 401).

After granting the Defendant's motion for a judgment of acquittal, the trial court rejected the Defendant's request to explain to the jury the legal basis for the dismissal of the robbery charges. During a jury-out hearing, the following exchange took place:

> THE COURT: I don't explain to them my rulings on evidence. . . . I don't explain my legal rulings to the jury.

---

[7](...continued)
to prove his acquittal of the prior crime. Five states have adopted a rule similar to that in Holman, which, if read broadly, would never allow the introduction of evidence of a prior crime for which the defendant was acquitted. Sixteen states, such as Rhode Island, have held that when evidence of other crimes for which the defendant was acquitted is admissible in a trial, the defendant must be allowed to introduce evidence of his acquittals. See Christopher Bello, Annotation, Admissibility of Evidence as to Other Offense as Affected by Defendant's Acquittal of That Offense, 25 A.L.R.4th 934 (1983).

Of course, Tennessee is different from most state and federal jurisdictions that evaluate the admissibility of prior crime evidence by a preponderance of the evidence standard, while our Rule of Evidence 404(b) employs a clear and convincing standard. Again, however, these issues are best left for another day when the viability of the Holman rule and the admissibility of evidence of a prior crime for which the defendant was acquitted are properly presented for review.

[DEFENSE COUNSEL]: But the fact is, . . . he's been acquitted on these charges.

THE COURT: So. They're not supposed to have anything to do with that.

[DEFENSE COUNSEL]: But the problem is that the motive, the motive for the alleged kidnapping is this alleged robbery.

THE COURT: Yes. But he's been acquitted not because he didn't do it.

In our view, the trial court considered the acquittals as irrelevant, just as we ruled in Turner.

While not mentioning Turner, the Court of Criminal Appeals distinguished Holman and found that the trial court erred by failing to inform the jury of the acquittals, but as indicated, concluded that the error was harmless. Little, 2012 WL 8718, at *7; see Tenn. R. App. P. 36(b). Although we have also distinguished the Holman decision, we find that the trial court's refusal to inform the jury that the Defendant had been acquitted of the aggravated robbery charges for lack of corroboration of accomplice testimony was not erroneous.

While declining to explain the basis of its ruling, the trial court did inform the jury that the robbery charges had been removed from the indictment and directed the jury not to speculate as to the reasons for their removal. The State is entitled to the presumption that the jury followed the instructions of the trial court. State v. Odom, 336 S.W.3d 541, 562 (Tenn. 2011). While an appropriate instruction limiting consideration of evidence of the robbery to possible motive for the kidnapping may have been preferable, the Defendant did not make any such request and the trial court is under no obligation to issue a limiting instruction sua sponte. See State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000).[8]

In summary, the trial court did not err by failing to inform the jury that the Defendant had been acquitted of the robbery charges after those charges were dismissed at the conclusion of all the proof. When presented with a procedural posture such as this, it is sufficient for the trial court to inform the jury that the dismissed charges have been removed from the indictment, that no instruction concerning the dismissed charges will be provided, and that the jury should not speculate as to the removal of the dismissed charges or the absence of instructions on the dismissed charges. The trial court, if requested to do so, should also provide an appropriate limiting instruction as to the purpose of the evidence

---

[8] Limiting instructions are encouraged to prevent prejudice and the misuse of testimony regarding a defendant's prior bad acts. Howell, 868 S.W.2d at 255.

related to the dismissed charges.

### C. Corroboration of Accomplice Testimony

The Defendant next argues that he was denied a fair trial by the trial court's failure to instruct the jury on the level of corroboration required for accomplice testimony. According to the Defendant, "The trial court's error prevented the jury from properly deliberating and applying the correct standard in considering [Grayson's] testimony about the aggravated robberies, which the [S]tate used as motive evidence to suggest that the [Defendant] had committed the especially aggravated kidnapping." Initially, we again observe that the Defendant, after he was acquitted of the robbery charges, failed to request an instruction limiting consideration of the robbery to a possible motive for the kidnapping. Moreover, the Defendant has cited no authority for the proposition that accomplice testimony as to motive must be corroborated in order to be admissible.[9] As the Court of Criminal Appeals stated, "The accomplice corroboration requirement has functionally served as a safeguard against the obvious dangers of convicting a defendant of an offense based solely upon the testimony of an accomplice to *that* offense." Little, 2012 WL 8718, at *10 (citation and internal quotation marks omitted).

While Grayson was an accomplice to the 1998 robbery, he was not an accomplice to his own kidnapping. As to the kidnapping, Grayson testified as the victim, not an accomplice, in that crime. In consequence, his testimony about the kidnapping did not require corroboration. Further, Ellison, who was not an accomplice to the kidnapping, testified that the Defendant was the perpetrator. Several defense witnesses acknowledged that Grayson had been kidnapped and beaten, even though they claimed the Defendant was not the perpetrator. While a jury instruction as to accomplice testimony would have been necessary if the robbery charges had been submitted to the jury, that instruction was not applicable to the kidnapping charge. In any event, we agree with the Court of Criminal Appeals' assessment that "the [D]efendant was not convicted of especially aggravated kidnapping *because* the jury heard or believed [Grayson's] testimony about the [D]efendant's motive . . . but because the proof established that the [D]efendant committed the especially aggravated kidnapping." Id. at *8.

---

[9] In State v. Rodriguez, No. M2005-00951-CCA-R3-CD, 2006 WL 2310666, at *12 (Tenn. Crim. App. Aug. 7, 2006), perm. app. denied (Tenn. 2006), the defendants argued that certain prior bad acts evidence did not meet the "clear and convincing" requirement of Tennessee Rule of Evidence 404(b) because that evidence was based solely on the testimony of an accomplice. While citing the well-established rule that an accused may not be convicted solely upon the uncorroborated testimony of an accomplice, the Court of Criminal Appeals "found no authority suggesting that corroborating testimony is necessary in [the context of Rule 404(b) evidence]." Id. In any event, the Defendant did not ask the trial court to apply the standards of Rule 404(b) to determine whether the State would be allowed to argue the facts of the 1998 robbery to show motive for the kidnapping.

**D. Criminal Responsibility**

The Defendant further argues that he was denied a fair trial because the trial court provided a jury instruction on criminal responsibility for conduct of another. Tennessee Code Annotated section 39-11-402 provides that a person may be held liable for the criminal acts of another when:

(1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

Tenn. Code Ann. § 39-11-402 (2010). This statute codified the common law, which provided for "equal criminal liability for principals, accessories before the fact, and aiders and abettors." State v. Howard, 30 S.W.3d 271, 276 (Tenn. 2000) (citing Tenn. Code Ann. §§ 39-11-401, -402 sentencing commission's cmts.). Section 39-11-402(2) does not prescribe a separate and distinct crime; instead, it works in synergy with the charged offense to establish a defendant's guilt through the actions of another. State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). The justification for criminal liability is that aiders and abettors should be held accountable for the criminal harms they intentionally facilitated or helped set in motion. Howard, 30 S.W.3d at 276; Key v. State, 563 S.W.2d 184, 186 (Tenn. 1978); State v. Grooms, 653 S.W.2d 271, 275 (Tenn. Crim. App. 1983).

To prove guilt through a theory of criminal responsibility, the State must establish that the defendant "'knowingly, voluntarily and with common intent unite[d] with the principal offender[ ] in the commission of the crime.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)). Trial courts should provide a jury instruction on criminal responsibility if the "issue is fairly raised by the evidence." State v. Collins, No. M2005-01685-CCA-R3-CD, 2006 WL 2380610, at *4 (Tenn. Crim. App. Aug. 15, 2006). Mere presence during the commission of a crime is insufficient to support a conviction. See Flippen v. State, 365 S.W.2d 895, 899 (Tenn. 1963). It is not, however, necessary for one to take a physical part in the crime; encouragement of the principal is sufficient. State v. McBee, 644 S.W.2d 425, 428 (Tenn.

-16-

Crim. App. 1982). Formerly under our common law and now by statute, defendants convicted under a theory of criminal responsibility are considered to be principal offenders, just as if they had committed the crime themselves. See State v. Carson, 950 S.W.2d 951, 954 (Tenn. 1997). A separate indictment for criminal responsibility is unnecessary when a defendant has been indicted for the primary offense. Lemacks, 996 S.W.2d at 170; State v. Barnes, 954 S.W.2d 760, 763 (Tenn. Crim. App. 1997).

Here, the Defendant was indicted for the primary offense of especially aggravated kidnapping. The trial court instructed the jury as to that charge, its lesser-included offenses, and criminal responsibility for conduct of another. Although the Defendant testified that he had never been to the Davenport house, Grayson testified that the Defendant drove him there, tied him to a chair, "pistol whipped" him, and held him at gunpoint while forcing him to smoke crack cocaine and eat dog feces. While Grayson testified that the Buchanan brothers and other people were present during his kidnapping, Grayson and Ellison were consistent in their testimony that the Defendant was primarily responsible for the crime. Ellison further testified that he saw the Defendant in the room where Grayson was tied to a chair, heard the Defendant raising his voice toward Grayson, and understood the Defendant to be primarily responsible for his kidnapping. In consequence, even if the jury determined that the Defendant did not physically participate in the kidnapping, this testimony was sufficient to establish that the Defendant was not only present at the Davenport house during the kidnapping, but that he had encouraged the Buchanan brothers or some other participant in the commission of the offense. The trial court did not err by providing an instruction on criminal responsibility for conduct of another.

### E. Cumulative Error

Finally, the Defendant argues that he was denied a fair trial because of an accumulation of errors by the trial court. Because we discern no error by the trial court, the Defendant's argument is without merit.

### III. Conclusion

The trial court did not err by providing a curative instruction rather than directly informing the jury that the Defendant had been acquitted of the two counts of aggravated robbery. Further, the trial court did not err by failing to instruct the jury on accomplice testimony or by instructing the jury on criminal responsibility. The judgment of the Court of Criminal Appeals is, therefore, affirmed. It appearing that the Defendant is indigent, costs are adjudged against the State.

_____
GARY R. WADE, CHIEF JUSTICE