IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 1, 2015 Session

**STATE OF TENNESSEE v. AUSTIN WELLS**

**Appeal from the Criminal Court for Shelby County**
**No. 13-02355     Glenn Ivy Wright, Judge**

_____

**No. W2014-02448-CCA-R3-CD  -  Filed November 16, 2015**
_____

Defendant, Austin Wells, appeals his conviction for driving under the influence ("DUI") and reckless driving, arguing that his warrantless arrest for the offenses was not supported by probable cause and that there is insufficient evidence to support his convictions. We conclude that Defendant has waived both of these issues and that he is not entitled to plain error relief. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Charles Edgar Waldman, Memphis, Tennessee, for the appellant, Austin Wells.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

_Procedural History_

Defendant was indicted on three counts of driving under the influence of an intoxicant ("DUI") and one count of reckless driving for an incident occurring on July 4, 2012. After a jury trial, Defendant was convicted of one count of DUI and reckless driving. The jury found Defendant not guilty of the other two counts of DUI. On

January 24, 2014, the trial court entered judgments for both convictions, imposing a sentence of eleven months and twenty-nine days for DUI and six months for reckless driving. Both sentences were run concurrently with each other and all but forty-eight hours of the sentence were to be served on supervised probation. The trial court denied Defendant's motion for new trial, and Defendant timely filed a notice of appeal.

*Facts*

On the evening of July 4, 2012, Shelvia Day and her boyfriend, Bobby Carmack, were sitting in chairs underneath a dogwood tree in their front yard. Ms. Day had consumed about half of a beer, and Mr. Carmack had "just started" on his second beer. Defendant lived three houses down on the same side of the road as Ms. Day and Mr. Carmack. They observed Defendant drive his truck past his house and approach their home "real slow." Defendant's truck hit the side of Mr. Carmack's vehicle, which was parked on the street within eight inches of the sidewalk in front of their yard. Defendant reversed his vehicle and then drove forward into Mr. Carmack's vehicle again, hitting the front bumper and license plate holder of Mr. Carmack's vehicle. Ms. Day "hollered" at Defendant. Defendant then hit the curb and "mashed the gas," driving into the front yard about three feet away from the dogwood tree where Ms. Day and Mr. Carmack were sitting. Defendant again reversed his vehicle, drove toward his house, and parked his truck "halfway in the middle of the street" such that he was "not even on the side of the road." Defendant parked his truck "in front of the house before his house" rather than on the street in front of his own house.

Defendant approached Ms. Day and Mr. Carmack. He asked if he hit Mr. Carmack's vehicle and offered to pay for the damage. When Ms. Day suggested that Mr. Carmack call the police, Defendant began denying that he hit the vehicle. When Mr. Carmack went inside to call the police, Ms. Day moved from the tree to the steps of the porch and Defendant followed her. He stood "pretty close" to her face while continuing to discuss the incident. Ms. Day noticed that his breath "smelled pretty bad[ly]" of alcohol, but she did not smell the odor of marijuana. Defendant was slurring his speech and "walking all over the place." Ms. Day testified that it was her opinion that Defendant was drunk. Mr. Carmack described Defendant as "in a daze," as if "he was looking beyond what he was actually looking at." When Mr. Carmack saw that Defendant was "getting in [Ms. Day's] space," he told Defendant to leave their property, so Defendant went home.

Officer Joseph Cunningham of the Memphis Police Department and his partner responded to the call, arriving approximately twenty minutes after Mr. Carmack called the non-emergency number. After getting an account of the incident from Ms. Day and Mr. Carmack, the officers went to Defendant's house. Officer Cunningham estimated that this conversation lasted between five and seven minutes. There was no indication

that either Ms. Day or Mr. Carmack had been drinking and neither of them appeared intoxicated. Defendant's girlfriend answered the door. Officer Cunningham inquired about the driver of the truck, and Defendant's girlfriend told him it was Defendant. When Officer Cunningham asked to speak with Defendant, Defendant's girlfriend informed the officers that he was in the shower. She shut the door, and the officers waited on the porch for no longer than three minutes. Officer Cunningham observed that Defendant's vehicle was directly in front of his house, but it was three or four feet from the curb, so far off the curb that it was parked illegally. It was "more toward the middle of the street than to the curb."

When Defendant opened the door, Officer Cunningham asked him to step outside to discuss the incident. Defendant admitted that he had been driving his truck and said that he "had had a few drinks earlier in the day." When answering questions, Defendant's speech was slurred and his breath smelled of alcohol. His eyes were "watery" and a "little bloodshot," and he was "unsteady on his feet, swaying a little bit." When the officers asked Defendant to step down from the porch into the yard, they were "nervous" that Defendant might fall.

Officer Cunningham decided "to detain" Defendant for investigation. Pursuant to "standard procedure," Officer Cunningham did a "pat down" search of Defendant for weapons. During the pat down, Officer Cunningham "located in [Defendant's] right front pocket a bag of marijuana," which Officer Cunningham "recognized from the experience that [he's] had on the job." The marijuana was in a small clear plastic bag. After finding the marijuana, Officer Cunningham arrested Defendant and placed him with handcuffs in a police car. Officer Cunningham called a DUI unit to come to the scene to complete the DUI investigation.

After completing their investigation of the vehicle collision, Officer Cunningham completed an offense report for the DUI and his partner completed an accident report for the collision. The damage to Mr. Carmack's vehicle was "minimal." There was a scratch down the driver's side, a "little nip" on the bumper, and the license plate holder was "scrunched up."

Officer Craig Cook of the Memphis Police Department responded to the request for a DUI unit. When he arrived on the scene, they moved Defendant to a church parking lot with lined parking spaces where Officer Cook could administer field sobriety tests. Defendant exited the police car, and Officer Cook asked him if he was willing to perform field sobriety tests. Defendant answered negatively. Officer Cook could smell "an odor of an intoxicant" on Defendant's breath. Defendant was "a little bit unsteady on his feet," his speech was slurred, and his eyes were bloodshot and did not focus very well. They placed Defendant in the back of Officer Cook's car, and Officer Cook asked Defendant if he was willing to take a breath or blood test. Defendant refused. Officer

Cunningham read the implied consent law to Defendant. Defendant persisted in his refusal. A video recording from the dashboard camera of Officer Cook's police car was introduced into evidence.

*Analysis*

On appeal, Defendant argues that his constitutional rights were violated because he was unlawfully arrested for DUI without probable cause. The State maintains that this issue is waived because it has been raised for the first time on appeal.

Defendant did not file a pre-trial motion to suppress evidence based on a violation of his constitutional rights during the DUI investigation. Similarly, he did not raise such an issue during the trial. At the close of the State's proof, Defendant made a motion for judgment of acquittal based on insufficient evidence. In his motion for new trial and at the hearing on that motion, Defendant pursued only two issues: that his convictions were supported by insufficient evidence and that sentencing statute Tennessee Code Annotated section 55-10-401(n) is unconstitutional.

Tennessee Rule of Criminal Procedure 12(b)(2)(C) requires that a motion to suppress evidence based on illegal seizure be filed prior to trial. Failure to do so results in a waiver of that defense, unless the trial court finds good cause to grant relief. Tenn. R. Crim. P. 12(f)(1). Furthermore, Tennessee Rule of Appellate Procedure 3(e) prohibits an appellant from basing an appeal on an issue that was not presented in a motion for new trial. *See also* Tenn. R. App. P. 36(a) (no appellate relief required for "a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Our appellate courts have consistently maintained that we will not entertain new issues on appeal, when the trial court was not presented with an opportunity to consider those issues in the first instance. *See, e.g.*, *State v. Bishop*, 431 S.W.3d 22, 43 (Tenn. 2014); *State v. Aguilar*, 437 S.W.3d 889, 899 (Tenn. Crim. App. 2013). Because Defendant did not raise his probable cause argument in the trial court, he has waived it.

However, Tennessee Rule of Appellate Procedure 36(b) provides that, "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." We will not grant relief on the basis of plain error unless the following five requirement are satisfied:

(a) the record clearly establishes what occurred in the trial court;

(b) a clear and unequivocal rule of law was breached;

(c) a substantial right of the accused was adversely affected;

(d) the accused did not waive the right for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283. The burden is on the defendant to persuade the appellate court that the trial court committed plain error and that the error was of "such a great magnitude that it probably changed the outcome of the trial." *Id.* (quoting *Adkisson*, 899 S.W.2d at 642); *see also* Tenn. R. App. P. 36(b) (relief may be granted when an "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process"). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).

As best we can gather, the thrust of Defendant's illegal arrest claim is that the officers lacked probable cause to arrest him for DUI because they had not personally observed him operating his vehicle and because he had an opportunity to imbibe alcohol before they physically observed him. Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

A law enforcement officer may make an arrest without a warrant when there is probable cause to believe that a driver has caused a traffic accident while driving under the influence of an intoxicant. *See* T.C.A. § 40-7-103(a)(6).[1] "The determination of probable cause is a mixed question of law and fact that we review de novo." *State v. Bell*, 429 S.W.3d 524, 529 (citing *Ornelas v. United States*, 517 U.S. 690, 696-98 (1996); *State v. Davis*, 354 S.W.3d 718, 726 (Tenn. 2011)). "[P]robable cause exists when 'at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent

---

[1] Defendant does not argue that the police were without authority to arrest him; instead he argues only that they lacked a constitutionally adequate justification for doing so.

- 5 -

person in believing that the defendant had committed or was committing an offense.'" *Id.* at 530 (quoting *State v. Echols*, 382 S.W.3d 266, 277-78 (Tenn. 2012) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964))). "Probable cause must be more than mere suspicion, but it need not be absolute certainty." *Id.* (internal citations removed). Additionally, an "innocent explanation does not prevent [a court] from finding probable cause." *Id.* at 535 (citing *State v. Grier*, 791 P.2d 627, 632 n.3 (Alaska Ct. App. 1990) (stating that probable cause may be established "even though the facts known to the officer could also be reconciled with innocence")). Finally, "it matters not whether the arresting officers themselves believed that probable cause existed." *Id.* at 530 (citing *State v. Huddleston*, 924 S.W.2d 666, 676 (Tenn. 1996) ("[An officer's] subjective belief that he did not have enough evidence to obtain a warrant is irrelevant to whether or not probable cause actually existed.")).

Contrary to Defendant's assertions, the record demonstrates that the officers possessed adequate probable cause to arrest him for DUI. When Officer Cunningham and his partner responded to the scene, Ms. Day and Mr. Carmack described Defendant's erratic driving behavior. They also related their observations about his demeanor and appearance and told the officers that they suspected that Defendant was intoxicated at the time of the incident. When the officers spoke to Defendant at his house, Officer Cunningham personally observed that Defendant appeared to be under the influence of an intoxicant because he smelled of alcohol, his speech was slurred, his eyes were bloodshot and watery, and he was unsteady on his feet. During what appears from the record to be consensual responses to questioning, Defendant admitted that he was driving his truck at the time of the incident and that he had consumed alcohol earlier in the day.

Based on the totality of the circumstances, we believe that the officers had probable cause to arrest Defendant for DUI.[2] As reasonably trustworthy information, the officers were justified in relying on the statements of Ms. Day and Mr. Carmack as eye witnesses in addition to their own physical observations of Defendant's demeanor and appearance and also Defendant's own admissions. The fact that Defendant conceivably could have consumed alcohol inside his home during the intervening time between the vehicle collision and his arrest does not dictate otherwise. There is no evidence in the record to suggest that he did so, and the length of time between the accident and his arrest is not so significant as to undermine the relevance of his condition at that time. Therefore, Defendant is not entitled to plain error relief on his constitutional claim that his arrest was not supported by probable cause because he has failed to prove that a clear and unequivocal rule of law was breached.

---

[2] We note that this probable cause existed independently of Defendant's arrest for possession of marijuana.

We observe, and the State acknowledges, that Defendant's appellate brief obtusely suggests that the trial court erred in denying his motion for judgment of acquittal on the basis of sufficiency of the evidence and by failing to act as the thirteenth juror. Because Defendant has not clearly articulated his argument on these bases or supported his argument by citations to the record and applicable law, he has again risked waiver of these issues. Tenn. Ct. Crim. App. R. 10(b); *see also* Tenn. R. App. P. 27(a). However, because Defendant has thoroughly argued the sufficiency of the evidence to the trial court, we will consider the merits of this issue.

The legal standard for resolution of a motion for judgment of acquittal under Tennessee Rule of Criminal Procedure 29 is "the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction." *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). The relevant question the trial court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *Id.* (citing Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "A trial court's determination of a motion for a judgment of acquittal raises a question of law." *Id.* (citing *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)).

For the evidence to support a conviction for DUI, the State has to prove that Defendant was in physical control of an automobile while under the influence of an intoxicant which impaired his ability to safely operate the automobile by depriving him of the clearness of mind and control that he would have otherwise possessed. T.C.A. § 55-10-401(1). Reckless driving is that which is done in "willful or wanton disregard for the safety of persons or property." T.C.A. § 55-10-205(a).

Ms. Day and Mr. Carmack witnessed Defendant operate his vehicle in an unusual and erratic manner, which included colliding with Mr. Carmack's parked vehicle two or three times and driving over the street curb into the witnesses' front yard. Both witnesses observed that Defendant acted in a manner consistent with the effects of intoxication when he discussed the incident with them, and Ms. Day smelled a strong odor of alcohol on Defendant's breath. Officer Cunningham observed that Defendant ultimately parked his truck more in the middle of the street than against the curb near his house. Officer Cunningham and Officer Cook each observed that Defendant's demeanor and appearance during their investigation was consistent with the effects of intoxication. Defendant admitted to driving his vehicle at the time of the incident and to having consumed alcohol prior to the incident. This evidence is sufficient for a rational jury to find beyond a reasonable doubt that Defendant was driving under the influence and driving recklessly when he collided with Mr. Carmack's vehicle. Thus the trial court did not err in denying the motion for judgment of acquittal.

A trial judge has a "mandatory duty to serve as the thirteenth juror in every criminal case," *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995), "whereby the trial court must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict," *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). However, a trial judge is not "required to provide a specific statement on the record to indicate his or her approval of the jury's verdict." *State v. Hall*, 461 S.W.3d 469, 490 (Tenn. 2015), *petition for cert. filed*, (U.S. June 16, 2015) (No. 14-10311). "Whenever the trial judge simply overrules a motion for new trial, this Court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict." *State v. Thomas*, 158 S.W.3d 361, 405 (Tenn. 2005) (citing *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995)). In this case, the trial judge denied Defendant's motion for new trial in which Defendant specifically argued that there was insufficient evidence to support his convictions.[3] Thus, this issue is without merit, and Defendant is not entitled to relief.

Finally, we note that in his brief, Defendant asserts that "neither arresting officers nor the jury could reasonably have determined any alleged impairment of [Defendant's] faculties that may have contributed to the accident was in fact due to improper consumption of alcohol" because they did not know that Defendant suffered from an "injury and mental disability subsequent to a fall down an elevator shaft in 2005." However, as Defendant acknowledges, that information was not injected into this case until the sentencing hearing. Therefore, it is wholly irrelevant to our probable cause determination or the sufficiency of the evidence because neither the officers nor the jury was aware of the purported injury.

---

[3] The record on appeal contains a transcript of a hearing held on July 31, 2014. At the outset of that hearing, defense counsel informed the trial court:

> [I]n April we began [the] motion for new trial [hearing, and] we heard as to the sufficiency of the evidence and then argued the constitutionality of the one provision which allowed some metropolitan governments to perform community service. . . . After all of that argument, Your Honor made a ruling, if I recall, as to sufficiency of the evidence and asked us to brief the sole issue of the constitutionality of [the statute]. . . . And that's where we are.

Consistent with defense counsel's explanation, the July 31st hearing deals only with the constitutionality of the sentencing statute. The record does not contain a transcript of a hearing held in April regarding the issue of sufficiency of the evidence. "It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what transcribed in the trial court with respect to the issues which form the basis of the appeal." *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991) (citing Tenn. R. App. P. 24(b)). Consequently, "[i]n the absence of an adequate record on appeal, this [C]ourt must presume that the trial court's rulings were supported by sufficient evidence." *Id.* (citing *Vermilye v. State*, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)).

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE