IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 26, 2018 Session

## STATE OF TENNESSEE v. MATTHEW EDWARDS

**Appeal from the Criminal Court for Sullivan County**
**No. S65019   R. Jerry Beck, Judge**

———————————————————

### No. E2017-02329-CCA-R3-CD

———————————————————

Defendant, Matthew Edwards, was convicted of two counts of cruelty to animals against a pony and a dog.  The trial court sentenced Defendant to an effective sentence of eleven months and twenty-nine days.  On appeal, Defendant argues that: (1) the evidence was insufficient for a rational juror to have found him guilty of two counts of cruelty to animals beyond a reasonable doubt, and (2) the trial court erred in allowing the State to admit evidence of Defendant's prior statutory rape conviction.  After a thorough review of the facts and applicable case law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

George Todd East, Kingsport, Tennessee, for the appellant, Matthew Edwards.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Julie R. Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual and Procedural Background

On October 6, 2015, the Sullivan County Grand Jury indicted Defendant on two counts of cruelty to animals.

At trial, Officer Will Morrell testified that he worked as an animal control officer for Sullivan County. On December 30, 2014, Officer Morrell was called out to Defendant's property.[1] He observed "a brown and white pony in a red trailer[.]" He noted that the trailer did not give the pony any protection from the wind or weather because the trailer "had just metal cattle racks on it." The temperature at that time ranged from thirty degrees Fahrenheit or lower. Officer Morrell stated that "the pony probably looked all right as far as the health." He also observed a dog chained on Defendant's property that "was not real[ly] bad off skinny[,]" but Officer Morrell "could see his ribs a little bit and he was in mud." Officer Morrell noted that the dog had a doghouse for shelter and that Defendant had put hay in the doghouse. He also observed "a pot of water" that the dog could reach. Officer Morrell approached Defendant's residence and knocked on the door; however, no one answered the door. Officer Morrell inspected all the animals on the property and took photographs of their living conditions.

Officer Morrell contacted Detective Tracy Haraz and informed her of the situation. Detective Haraz advised Officer Morrell to "have a road officer come out and do a report." While he was still at Defendant's property, Officer Morrell contacted Agricultural Extension Agent Chris Ramsey. Officer Morrell picked up Agent Ramsey, and he and Agent Ramsey returned to Defendant's property later on December 30. Officer Morrell explained that a Sullivan County deputy had inspected Defendant's property during the time Officer Morrell was absent from Defendant's property.[2]

On January 5, 2015, Officer Morrell returned to Defendant's property and "left a cruelty warning." Officer Morrell spoke with Defendant's girlfriend at the residence. Defendant's girlfriend called Defendant on the phone, and Officer Morrell informed Defendant "that he needed to put a tarp up around at least three sides or all the way around that trailer." Officer Morrell returned to Defendant's property "probably a day later or so" and observed that Defendant had thrown a tarp "over the front" of the trailer where the pony was confined. Officer Morrell testified that the placement of the tarp on one side of the trailer was not in compliance with his instructions to Defendant on January 5. Officer Morrell did not instruct Defendant to take any action with regards to the dog chained on the property that he observed on December 30.

On cross-examination, Officer Morrell stated that he did not observe any food left out for the dog. Defendant did not inform Officer Morrell that Defendant did not own the dog that was chained on his property. Officer Morrell agreed that there was a bucket of

---

[1] It is unclear from the record who initially contacted animal control to report Defendant.
[2] Officer Morrell did not give the name of the deputy that responded to Defendant's property, but we assume it was Deputy Lawson.

water in the trailer with the pony.  He also observed that it "looked like somebody had fed [the pony] some hay[.]"

Deputy Brad Lawson from the Sullivan County Sheriff's Office ("SCSO") testified that, on December 30, 2014, he responded to Defendant's property for a welfare check about a "possibl[y] malnourished dog" and a "couple of other animals."  When Deputy Lawson arrived at Defendant's property, he observed "a dog chained to a doghouse."  He noted that the dog was "pretty malnourished."  He also observed "a pony in a trailer sitting in front of the house."  Deputy Lawson noted that the weather that day was rainy and cold.  He explained that the trailer housing the pony did not have a roof that completely covered the trailer or any covering around the sides of the trailer.  On cross-examination, Deputy Lawson stated that he did not speak with Defendant on December 30.  He observed that the pony had access to food and a five-gallon bucket of water in the trailer.  He also agreed that the dog had access to food, water, and shelter.

Agent Ramsey stated that he worked for the University of Tennessee as the County Director and Agricultural Extension Agent for Sullivan County.  Agent Ramsey explained that, as part of his work as an agricultural extension agent, he made probable cause determinations about violations of the animal cruelty statute as it applied to livestock.  On December 30, 2014, he went to Defendant's property and observed a pony in a trailer.  He testified that the pony did not have adequate shelter in the trailer.  After he visited Defendant's property, Agent Ramsey completed an Animal Cruelty Investigation Form.  On cross-examination, Agent Ramsey recalled seeing hay in the trailer with the pony.  He did not observe a tarp around the trailer.  On redirect, Agent Ramsey agreed that, on the Animal Cruelty Investigation Form, he wrote that he observed that Defendant's animals did not have access to water.

Detective Haraz testified that she worked for the SCSO.  She was aware that Defendant had animals on his property because she had been working with Officer Lawson and Sullivan County Animal Control on Defendant's case.  On January 6, 2015, Detective Haraz visited Defendant's property to inspect Defendant's animals and observed that the condition and treatment of the animals had not changed since Officer Lawson's visit.  She stated that the temperature was twenty-six degrees Fahrenheit that day and that the wind was blowing around eleven miles an hour.  She observed "a trailer with a pony in it and a skinny dog that was chained to a tree."  The trailer had an "open roof."  Detective Haraz stated that the pony did not have access to any food or water in the trailer.  She testified that the trailer "smelled like feces" and that the trailer had "a wooden floor" that was covered with hay, feces, and mud.  Detective Haraz also observed that the dog chained to a tree did not have access to food or water.  She stated that the doghouse that the dog used for shelter was "older[,]" "muddy[,]" and "had some feces

around it with a little bit of straw in it." Detective Haraz testified that Defendant was not present at the property when she visited, so she contacted animal control.

On cross-examination, Detective Haraz agreed that the pony looked healthy and that she observed a red bucket in the pony's trailer. She also observed a bowl near the dog chained to a tree, but she did not observe any food or water in the bowl. On redirect, Detective Haraz clarified that she was not concerned with the pony's body condition, but she was concerned that the pony did not have a windbreak in the trailer while the weather was cold and windy.

Dr. Shean Hobbs testified that he was a veterinarian. After the trial court declared Dr. Hobbs to be an expert in veterinary medicine, he stated that he treated the dog that was chained to a tree on Defendant's property. When the dog arrived at Dr. Hobbs's clinic on January 24, 2015, the dog had "an acute case of vomiting and diarrhea[.]" He testified that the dog was "pretty thin" and had a body composition score of one and one-half out of five.[3] Dr. Hobbs stated that, based on the photographs of the dog on December 30, which had previously been admitted into evidence, he would have given the dog a score of one and one-half on that day also. He noted that it would have taken "a minimum of six to eight weeks" for the dog to develop a body composition score of one and one-half. He explained that the dog was malnourished and that the dog's muscles were "kind of atrophied." In Dr. Hobbs's opinion, the dog's living conditions were "pretty undesirable, inappropriate, [and] unsanitary." He noted that the bedding in the doghouse was "scant" and wet, which would be "conducive to disease and . . . not very comfortable[.]" On cross-examination, Dr. Hobbs testified that the dog had resided at the Sullivan County Animal Shelter from January 6 through January 24, 2015. On redirect examination, Dr. Hobbs stated that the chain that was on the dog on Defendant's property was a "log chain" which was "very cumbersome[,]" "painful[,]" and "[c]ertainly contributed to a poor quality of life and could lead to spinal problems . . . in the near future."

The jury convicted Defendant as charged. The trial court sentenced Defendant to concurrent sentences of eleven months and twenty-nine days in the county jail for each count of cruelty to animals. The trial court also ordered Defendant to pay restitution and that Defendant was "prohibited from owning or having animals in his custody for one year[.]" Defendant filed a timely motion for new trial, which the trial court denied. Defendant now timely appeals the trial court's judgments.

---

[3] Dr. Hobbs explained that, "[o]n a scale of five, a one would be very thin or basically emaciated, and three out of five would be normal, and five out of five would be obese."

## II. Analysis

### *Sufficiency of the evidence*

Defendant argues that the evidence was insufficient for a rational trier of fact to have found him guilty beyond a reasonable doubt of two counts of cruelty to animals because the dog had food, water, and shelter; the pony had temporary shelter; and he had made temporary measures to give the pony a windbreak. Defendant also argues that the trial court erred in denying his motion for judgment of acquittal and by affirming the verdict as the thirteenth juror. The State responds that Defendant "was required to provide adequate shelter for the pony, even if temporary, and he failed to do so, despite being told he needed to place a wind break on at least three sides of the trailer." The State also contends that witness testimony provided sufficient evidence that the dog did not have reasonable access to food, water, or adequate shelter.

Under Tennessee Rule of Criminal Procedure 29, a trial court "shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." Tenn. R. Crim. P. 29(b). Whether to grant a motion for judgment of acquittal is a question of law, and the trial court must look at the State's evidence in the light most favorable to the State and must "allow all reasonable inferences from it in the State's favor; to discard all countervailing evidence, and if then, there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the evidence of the State," the trial court must deny the defendant's motion for judgment of acquittal. *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). In ruling on a motion for judgment of acquittal, the trial court looks at the legal sufficiency of the evidence and does not weigh the evidence. *Id.* "The standard by which the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction[,]" *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013),whether, when the evidence is viewed in the light most favorable to the State, any rational juror could have found the defendant guilty of the offense beyond a reasonable doubt, *State v. Collier*, 411 S.W.3d 886, 893-94 (Tenn. 2013).

Rule 33(d) of the Tennessee Rules of Criminal Procedure states, "The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This rule is the modern equivalent of the "thirteenth juror rule" and requires the trial court to weigh the evidence and grant a new trial "if the evidence preponderates against the weight of the verdict." *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). Our supreme court has stated that this rule "imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal

case[] and that approval by the trial judge of the jury's verdict as the thirteenth juror is a necessary prerequisite to imposition of a valid judgment." *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995). When a trial judge overrules a motion for new trial, absent any evidence that the trial court expressed dissatisfaction or disagreement with the weight of the evidence or the verdict, this court presumes that the trial judge has served as the thirteenth juror and approved the jury's verdict. *Id.* Once the trial court fulfills its duty as the thirteenth juror and imposes a judgment, appellate review is limited to determining the sufficiency of the evidence. *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995) (citing *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993)).

Because Defendant's argument regarding the motion for judgment of acquittal is essentially a sufficiency of the evidence claim and because the trial court fulfilled its role as thirteenth juror, we will address Defendant's arguments relating to his motion for judgment of acquittal and the trial court's role as thirteenth juror as raising one issue – the sufficiency of the evidence.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

As charged in this case, "[a] person commits an offense who intentionally or knowingly: . . . [f]ails unreasonably to provide necessary food, water, care or shelter for an animal in the person's custody[.]" Tenn. Code Ann. § 39-14-202(a)(2) (2015).

When the evidence is viewed in the light most favorable to the State, we conclude that there was sufficient evidence for a rational juror to have found Defendant guilty of

two counts of cruelty to animals beyond a reasonable doubt. The testimony at the trial established that, on December 30, 2014, Officer Morell observed that the pony did not have adequate shelter. Agent Ramsey also observed the pony on December 30 and believed that the pony did not have adequate shelter. He completed an Animal Cruelty Investigation Form after visiting Defendant's property. On January 5, 2015, Officer Morrell issued a cruelty warning and told Defendant to fix the pony's enclosure so that the pony had a windbreak on at least three sides of its pen. When Officer Morrell returned to Defendant's property, a tarp covered one side of the pony's enclosure, which did not comply with Officer Morrell's instructions to provide adequate shelter. Detective Haraz observed the pony's condition on January 6, 2015, and noted that Defendant had not complied with Officer Morrell's instructions to provide adequate shelter for the pony. This evidence is sufficient to establish that Defendant knowingly failed to provide reasonable shelter for the pony.

Regarding the dog that was chained up on Defendant's property, on December 30, 2014, Officer Morrell observed that the dog had access to water but did not have access to food. Deputy Lawson testified that he observed the dog on December 30 and that the dog was "pretty malnourished." Detective Haraz observed the dog's condition on January 6, 2015, and she testified that the dog did not have access to food or water and that the dog's shelter was muddy. Dr. Hobbs examined the dog on January 24, 2015, and he testified that the dog had "an acute case of vomiting and diarrhea[,]" was "pretty thin[,]" and had a body composition score of one and one-half out of five. Dr. Hobbs stated that, based on the photographs of the dog on December 30, he would have given the dog a score of one and one-half on that day also. He noted that it would have taken "a minimum of six to eight weeks" for the dog to develop a body composition score of one and one-half. He explained that the dog was malnourished and that the dog's muscles were "kind of atrophied." In Dr. Hobbs's opinion, the dog's living conditions were "pretty undesirable, inappropriate, [and] unsanitary." He noted that the bedding in the doghouse was "scant" and wet, which would be "conducive to disease and . . . not very comfortable[.]" This evidence was sufficient for a rational juror to find beyond a reasonable doubt that Defendant knowingly failed to provide reasonable food, water, and shelter to the dog while the dog was in Defendant's custody.

*Failure to exclude prior statutory rape conviction*

Defendant argues that the trial court erred by failing to exclude his prior statutory rape conviction from admission into evidence.[4] Additionally, he argues that the

---

[4] In his issue statement, Defendant states the following: "Whether the trial court committed reversible error by not excluding [Defendant]'s prior statutory rape conviction, thus denying him of the right to a fair trial by depriving him of the opportunity to testify by the 'unfair' prejudice that would result from him testifying." Defendant does not cite to any case law, rules, or statutes that address the right to

conviction should have been excluded under Tennessee Rule of Evidence 403 because the conviction was unfairly prejudicial and "had no connection to not providing shelter for a pony or chaining up a stray dog." The State contends that Defendant has waived plenary review of this issue because he failed to include it in his motion for new trial. The State also argues that Defendant is not entitled to plain error relief because "[n]o clear and unequivocal rule of law was broken, a substantial right of . . . [D]efendant was not adversely affected, and consideration of the issue is not necessary to do substantial justice."

After the State rested its case-in-chief, the following exchange occurred:

[DEFENSE COUNSEL]: Judge, there's one that [the State] and I think may be wise use of judicial time, and it regards [Defendant] testifying. We anticipate he'd testify. But the State had filed regarding a prior record he had. And I would ask that the State not be able to refer to a statutory rape charge he had a long time ago which has nothing to do with this particular case.

THE [TRIAL] COURT: But it's a felony. Statutory rape is an E-felony under present . . .

[THE STATE]: It is.

THE [TRIAL] COURT: Was this in Tennessee?

[THE STATE]: And it was within . . . It wasn't over ten years ago. He was convicted in Sullivan County Criminal Court on July 2nd, 2009.

[DEFENSE COUNSEL]: But all that is, is inflammatory and prejudicial and nothing towards this particular matter. And . . .

THE [TRIAL] COURT: Well, that would be considered a violent crime. And I understand your argument that it's not relevant. But the State is allowed to ask about prior felony convictions. This certainly was a felony. . . .

_____

testify in the analysis portion of his appellate brief. To the extent that Defendant is attempting to raise a constitutional claim that he was denied his right to testify because of the trial court's decision to admit evidence of his prior statutory rape conviction, we conclude that Defendant has waived this issue under Tennessee Court of Criminal Appeals Rule 10(b), which states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."

. . . .

THE [TRIAL] COURT: . . . I'm still thinking about the statutory rape. But that's a crime done with consent but illegal because of the age of the child.

[DEFENSE COUNSEL]: There was more than three years age difference between them, Judge. It was the basis of the statutory rape.

[THE STATE]: But it's still a felony which the State is allowed, under the rules of evidence, to examine and impeach . . . Defendant upon his prior felony convictions that are less than ten years old. That's the blatant wording of the rule.

THE [TRIAL] COURT: You're just taking the theory that the probative value would outweigh the . . .

[DEFENSE COUNSEL]: Absolutely. It has nothing whatsoever to do with whether or not the pony was intentionally affected or the stray dog was not cared for.

THE [TRIAL] COURT: Well, under Rule 403, I'm required to consider the potentiality of the being unfairly prejudicial.

[THE STATE]: And to take any prejudicial effect out, I mean, the State would be content with just asking him if he's been convicted of a prior felony without any mention of it being called stat[utory] rape.

THE [TRIAL] COURT: Well, you can't do that under case law in Tennessee.

[THE STATE]: But it's the State's position...

THE [TRIAL] COURT: I -- I don't know. This is an animal cruelty case. The probative value goes to his truthfulness, and it's an impeachment tool. Let me look at Rule 403. That's really what you're making your motion on, I think, [defense counsel]. Isn't it?

[DEFENSE COUNSEL]: Yes.

(The Court reviews certain material.)

THE [TRIAL] COURT: Says, [Reading] "The key word in the phrase 'unfair prejudicial' is 'unfair.' Most evidence is prejudicial to one side or the other. Rule 403 is only concerned with prejudice that is unfair. "According to the advisory committee from the Federal Rule 403, the term 'unfair prejudice' means the undue tendency to suggest decision on an improper basis commonly, though not necessary, an emotional one." Well, this has nothing to do . . . Like, if he had been convicted with cruelty to animals --

[DEFENSE COUNSEL]: Yes.

THE [TRIAL] COURT: -- and assuming that was a -- say it was an aggravated animal cruelty which is a felony, E-felony, it would -- probably I would suppress it. But this case, statutory rape, would be totally disjoined from this type of offense. Do you have any authority, [defense counsel]?

[DEFENSE COUNSEL]: No, Judge, other than obviously it's got nothing to do with the -- the animals but . . .

THE [TRIAL] COURT: Well, if . . . he murdered somebody and had been convicted of aggravated assault, I could see your argument. But these are totally unrelated. . . . [I]f he'd been convicted of felony aggravated cruelty to animals, I would clearly keep it out because that would clearly be unfair prejudicial. But I think in this circumstance I'm bound to overrule your objection.

[DEFENSE COUNSEL]: . . . Because this one, Judge, him and the young lady, you know, had a -- had a child together. And she was three years younger than him and she was underage.

THE [TRIAL] COURT: Well, still against the law.

Later, the trial court ruled that the State could cross-examine Defendant regarding his prior statutory rape conviction. Defendant decided not to testify.

Defendant did not raise this issue in his motion for new trial. Tennessee Rule of Appellate Procedure 3(e) states "that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence[] . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues

will be treated as waived." Tenn. R. App. P. 3(e). Rule 36(a) of the Tennessee Rules of Appellate Procedure states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). We determine that Defendant has waived plenary consideration of this issue because he failed to include the issue in his motion for new trial.

Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Adkisson*, 899 S.W.2d at 640-41; *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the *Adkisson* standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. The defendant bears the burden of persuasion to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

Here, we conclude that Defendant is not entitled to plain error relief on this issue. Defendant cannot establish that a clear and unequivocal rule of law was breached by the trial court's decision regarding his prior statutory rape conviction. The State asserts that Defendant's prior statutory rape conviction was admissible under Tennessee Rule of Evidence 609 because the conviction was "within Rule 609's [ten]-year time limit," "the trial court found that it was probative of . . . [D]efendant's credibility[,]" and the conviction's "probative value was not substantially outweighed by the danger of unfair prejudice because the statutory rape conviction was not similar to cruelty to animals." We agree with the State. Rule 609 allows the admission of a prior conviction during cross-examination if the prior conviction was for a felony or a crime that "involved dishonesty or false statement." Tenn. R. Evid. 609(a)(1)-(2). To impeach a defendant with a prior conviction, the State must give the defendant prior notice of its intent, and a conviction is not admissible if "a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution[.]" Tenn. R. Evid. 609(a)(3), (b). Additionally, the trial court must "determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." Tenn. R. Evid. 609(a)(3). Relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice[.]" Tenn. R. Evid. 403.

The presentence report states that, on July 2, 2009, Defendant pled guilty in Sullivan County Criminal Court to four counts of statutory rape, a Class E felony. *See* Tenn. Code Ann. § 39-13-506(d)(2)(A). Defendant received a sentence of one year in the Tennessee Department of Correction as a Range I standard offender; this sentence was suspended to one year of probation. Defendant does not assert on appeal that the conviction was remote, and we can infer from the record that Defendant completed the sentence within ten years of the commencement of the current prosecution. The State gave Defendant written notice of its intent to use this conviction for impeachment on June 20, 2016, almost a year prior to his trial for the current offenses. The trial court concluded that the probative value of the conviction as it related to Defendant's credibility outweighed its unfair prejudicial effect on Defendant because the current offenses were not similar to statutory rape and because the statutory rape conviction reflected on Defendant's character for truthfulness. Because the State gave Defendant notice of its intent to use the conviction, and the trial court determined that the conviction's probative value outweighed its prejudice to Defendant, the admission of the conviction did not breach any clear and unequivocal rule of law. Defendant is not entitled to plain error relief on this ground.

### III. Conclusion

We conclude that evidence presented at trial was sufficient for a rational juror to have found Defendant guilty of two counts of cruelty to animals. We also conclude that Defendant is not entitled to plain error relief based on his argument that the trial court erred by allowing the State to use his prior statutory rape conviction for impeachment if he testified. We affirm the trial court's judgments.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 12 -