IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 9, 2019 Session

## STATE OF TENNESSEE v. LAWRENCE DEWAYNE STONER

**Appeal from the Circuit Court for Benton County**
**No. 17CR30  Charles C. McGinley, Judge**

_____

**No. W2018-01230-CCA-R3-CD**

_____

The Defendant was convicted by a jury of three counts of tampering with governmental records and three counts of official misconduct after improperly entering jail credits during his employment as lieutenant over corrections in the Benton County Sheriff's Department.  After the verdict, the trial court entered a written order granting the Defendant judgments of acquittal on the three counts of official misconduct and dismissing the counts on the basis that any benefit did not accrue to the Defendant.  On appeal, the State argues that the trial court erred in granting the judgments of acquittal. The Defendant asserts that the notice of appeal was untimely and that the trial court properly granted judgments of acquittal.  After due consideration, we waive the timely notice of appeal, and we conclude that the trial court erred in its interpretation of the statute.  Accordingly, we reverse the granting of judgments of acquittal and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith (on brief) and Andrew C. Coulam (at oral argument), Senior Assistant Attorneys General; Matthew Stowe, District Attorney General; and Michelle Morris-Deloach, Assistant District Attorney General, for the Appellant, State of Tennessee.

Terry J. Leonard, Camden, Tennessee, for the Appellee, Lawrence Dewayne Stoner.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant was charged with four counts of tampering with governmental records and four counts of official misconduct after Mr. Phillip Christopher, the jail administrator of the Benton County Sheriff's Department, discovered that certain inmates had received what appeared to be unearned jail credits. Mr. Christopher and the Defendant were the only witnesses to testify at the trial.

Mr. Christopher testified that at the time of the offenses, the Defendant had recently been promoted to the post of lieutenant over corrections, which according to Mr. Christopher, made him "basically the second in command." Both the Defendant and Mr. Christopher were employed by Benton County in a public office. Mr. Christopher stated that the jail administrator is required to implement confinement based on court order and state law. The jail maintains a computer software system which calculates an inmate's release date based on inputs including the time of ordered confinement, start date, and pretrial jail credits. Inmates at the jail have the opportunity to earn credits by working, and credits reduce an inmate's time of confinement. Only Mr. Christopher, the Defendant, a sentence manager, and some assistants had permission to enter work credits. The Defendant was familiar with the software system and had helped to train Mr. Christopher on the use of the software.

Mr. Christopher testified that the jail used a trustee log to record inmates' work credits. The log would be signed by the inmate and verified by an officer. Each log sheet began on the 26th of one month and ran through the 25th of the following month in order to be compatible with credits given to inmates in state facilities.

On April 26, 2017, Mr. Christopher noticed that an inmate who should have been transported for a court date was not at the jail. He discovered that the inmate had been released approximately three and one-half days early, and he also found credits given to the inmate which did not match the credits she had earned as reflected in the trustee log sheet.

Mr. Christopher used the computer program to discover when the credits were entered and who entered them. He testified that the credits were entered prior to being earned, which was atypical. He discovered that inmate was given eleven credit days on February 27, 2017, and eight of these credits were for the period running February 26th to March 25th. He was able to ascertain that there were three credit additions and that one of these was subsequently deleted so that two remained: eight days added for the log sheet roughly encompassing March and three for the period roughly encompassing

February. Mr. Christopher testified that the inmate was given eight credits for "March" although the log sheet ultimately reflected that she had only earned six. She was also given credits for February that he could not verify. The credits were added from his computer at approximately 10:00 a.m. on February 27, 2017, under the Defendant's username. Mr. Christopher testified that he was on vacation at the time the credits were added and that the Defendant had permission to access his computer to make changes to work credits. The Defendant did not have permission to give unearned credits.

The jail was equipped with numerous cameras. The cameras were not synced with the software used to track jail credit, but both were routinely updated, and Mr. Christopher testified that the time stamp on the two would not usually be off by more than a few seconds. A video outside Mr. Christopher's office door showed the Defendant enter at 9:46 a.m. and leave at 10:10 a.m. Another employee, a sergeant, also entered and left during that time period, but the transcript does not reflect the times this other employee was in the office, and the video was not entered as an exhibit.

Mr. Christopher discovered two other occasions on which an inmate received what appeared to be unearned credit. He testified that one inmate should have earned twenty-one work credits for March but was given twenty-three. The computer program revealed that on March 22, 2017, credits were alternately added to her account and then deleted, for a total of four additions and three deletions. Mr. Christopher testified that administrators would typically do additions and deletions if they were trying to calculate a possible release date in reference to a court appearance. The information would be used to tell an inmate a potential release date contingent on credits being earned. The changes to this inmate's account were made from a kitchen office computer. The cameras showed that the Defendant was in the room with the computer while the changes were made, but the account used to make the changes was not the Defendant's account.

A third inmate was given twenty-nine days of credit when her log sheet reflected twenty-four days of work. The credits were added on April 11, 2017, though two additions and one deletion from a computer in the Defendant's office under the Defendant's username. The cameras revealed that the Defendant and the cook went into the Defendant's office prior to the additions.

Mr. Christopher could not say what benefit would be gained from an inmate being awarded credits which the inmate had not earned. He testified that the inmate would be released earlier than proper, which would be a violation of court order and state law.

Mr. Christopher testified that the Defendant knew he did not have permission to add unearned credits because the two had discussed an inmate who wanted extra credits due to personal issues. The Defendant had called Mr. Christopher about increasing the

inmate's credits on April 15, 2017, after the occurrence of the events on which the charges were based. Mr. Christopher had told the Defendant that the inmate was "getting everything that the law would allow. And that I did want anything like that done. I didn't want to be sitting on the same side of that cell door that they might be." Mr. Christopher considered the Defendant a personal friend prior to the offenses.

Mr. Christopher acknowledged that he had previously added and deleted credits to an inmate's account in an effort to calculate a potential release date. He also stated that, to his knowledge, the Defendant's only relationship with the three inmates at issue was one of jailer to inmate. He testified that the Defendant knew that the cameras in the jail were recording his whereabouts. Mr. Christopher did not try to obtain the return of the inmates who had been released early.

Mr. Christopher would typically try to assign a female correctional officer to transport a female inmate. He did not recall if he and the Defendant discussed toward the end of March having one of the inmates at issue transported to Henry County prior to her release date in order not to have to ask for overtime from a female officer over the weekend. He stated he would have had discussions similar to that "on a daily basis." He testified that it was possible that an inmate would be transported prior to his or her release date if the inmate had a court date. Typically, the inmate would be returned to Benton County, but occasionally another county "might have agreed to house them until our expiration date." He agreed that the inmate at issue had a hold in another county, but he could not recall if she was housed there for two to three days, allowing her to finish her Benton County sentence there.

The Defendant moved for judgment of acquittal on the basis that the State had not established the statutory element of a benefit to him, noting particularly the testimony that he had no personal relationship with the inmates and Mr. Christopher's testimony that he did not know what benefit might be gained from an inmate being awarded unearned credits. The trial court noted that the "State's got problems with that element" but denied the motion.

The Defendant testified regarding his stable family life and military history. He stated that he had no relationship with the three inmates at issue and that he did not try to confer a benefit or do harm to the inmates. He essentially acknowledged having made the credit adjustments but denied that he did so intending to improperly shorten the inmates' sentences. The Defendant explained the series of additions and deletions by observing that the system required credits to be input as negative numbers and noting that he was "notorious" for forgetting to input the number as a negative number. He testified that the deletions were an effort to correct inaccurate input and not an effort to reach a particular release date.

Regarding the first inmate, the Defendant testified that he entered three extra days because the log sheet contained rows for thirty-one days for each month. He testified that he must have accidentally counted the 29th, 30th, and 31st for the month of February, which did not have that many days. He added that he did not intend to give the inmate unearned credit.

The Defendant explained the extra credits for the second inmate by stating that she had a court date in Henry County and that her release from Benton County custody and transport to Henry County would have occurred over the weekend. According to the Defendant, he and Mr. Christopher discussed sending the inmate on Thursday, when a female officer was available. The Defendant testified that she would still have served the correct number of days, only in a different jail. The Defendant noted that Benton County and the surrounding counties would occasionally house inmates for one another.

Regarding the third inmate, the Defendant testified that she was working two different jobs and that he believed her credits were entered correctly based on the prior month's trustee log, which had not been entered into evidence. He stated that he did not receive anything from the inmates in exchange for entering work credits.

On cross-examination, he agreed that keeping accurate records was important. He did not dispute he made the entries, but he contended that the only incorrect entry was the one where he unintentionally gave the inmate credit for days that did not exist in February.

The State called Mr. Christopher for rebuttal, and he testified that the system did not show that the second inmate served her time in Henry County but that she was released early due to work credits. He would not have authorized her early release to save on costs.

The jury found the Defendant guilty of three counts of tampering with governmental records and three counts of official misconduct. The record reflects that two additional counts charging him with tampering with governmental records and official misconduct for giving unearned credits to a male inmate were dismissed at some point.[1]

The Defendant moved for judgment of acquittal on the official misconduct charges on the basis that the State had failed to establish that the Defendant had received any personal benefit. *See* T.C.A. § 39-16-402(a). At a hearing on April 19, 2018, the trial court determined that it would grant the judgments of acquittal for the official misconduct

---

[1] The presentence report erroneously states that he was convicted of these charges.

convictions and judicial diversion for the remaining convictions. A written order formally granting the judgments of acquittal and dismissing the charges, signed by the trial court, was filed in the record with a file-stamp date of May 16, 2018. The Assistant District Attorney's name was signed "by permission" on this order. On June 18, 2018, uniform judgment documents reflecting that the Defendant was granted judgment of acquittal on the three counts were filed with the court clerk, along with the uniform diversion documents for the Defendant's remaining convictions. The State filed its notice of appeal on July 3, 2018.

## ANALYSIS

The State asserts on appeal that the trial court erred in concluding that the benefit under the statute had to accrue to the Defendant. The Defendant responds that the trial court's interpretation was correct and that the State's notice of appeal was not timely filed. The State did not file a reply brief but asserted at oral argument that the notice of appeal was timely because it was filed within thirty days of the filing of the uniform judgment documents. The State did not, in the alternative, ask for this court to waive the timely filing of the notice of appeal.

### I. Notice of Appeal

The parties dispute whether the notice of appeal is timely and whether it ought to have been filed within thirty days of the filing of the signed order granting judgment of acquittal or within thirty days of the subsequently filed uniform judgment documents. The State's notice of appeal was within thirty days of the filing of the uniform documents but over thirty days from the filing of the signed order.

The State has a right to appeal a judgment "setting aside a verdict of guilty and entering a judgment of acquittal." Tenn. R. App. P. 3(c)(2); *see also* Tenn. R. Crim. P. 29(e)(2) ("The state may appeal when the court sets aside a verdict of guilty and enters a judgment of acquittal."). When the State chooses to appeal a judgment of acquittal granted by the trial court, notice of appeal must be filed within 30 days after the "date of entry of the judgment appealed from." Tenn. R. App. P. 4(a). This is the date that an order is entered granting the motion for judgment of acquittal. Tenn. R. App. P. 4(c) ("[T]he time for appeal for all parties shall run from entry of the order … granting or denying any … such motion…."). "The 30-day period specified in this subdivision in which to file notice of appeal is to be uniformly applied. It applies to appeals by the state as well as private parties, and in all civil and criminal proceedings." Tenn. R. App. P. 4(a) Advisory Comm'n Cmt. The Advisory Commission Comment elaborates that in the Commission's view, the thirty-day time period is not restrictive because the only action required is filing and serving a notice of appeal. *Id.*

This court has previously observed that "'the effective date for entry of a judgment … is the date of its filing with the court clerk after being signed by the judge.'" *State v. Vaughn*, 279 S.W.3d 584, 593 (Tenn. Crim. App. 2008) (quoting *State v. Stephens*, 264 S.W.3d 719, 729 (Tenn. Crim. App. 2007), *abrogated on other grounds as recognized by State v. Randall T. Beaty*, No. M2014-00130-CCA-R3-CD, 2016 WL 3752968, at *20 (Tenn. Crim. App. July 8, 2016)). In *Vaughn*, this court concluded that a motion for a new trial was timely filed because the thirty-day period began on the date that the judgment of conviction was file-stamped rather than on the date that the judgment was orally announced in court. *Id.* Because the file-stamp date "provides evidence of when the order of sentence was entered by the clerk," it begins the time period for the filing of a notice of appeal. *Stephens*, 264 S.W.3d at 729; *see State v. Grace Ann Blair*, No. M2015-01231-CCA-R3-CD, 2016 WL 6776356, at *3 (Tenn. Crim. App. Nov. 16, 2016) (concluding that the time to file a notice of appeal began after the entry of a file-stamped uniform judgment document rather than the entry of written findings purportedly backdated to the date of the filing of the uniform judgment document). The Tennessee Supreme Court has likewise held that the statutory period for seeking review of a petition to reopen a post-conviction action begins to run when the order denying the motion is filed rather than when it is signed or entered into the minutes. *Graham v. State*, 90 S.W.3d 687, 690-91 (Tenn. 2002).

The entry of a written order of dismissal begins the time for appealing the order. In *State v. Meeks*, the trial court suppressed certain evidence and the State, after seeking interlocutory appeal, elected to abandon the interlocutory appeal and instead request the court to dismiss the indictments so that it could appeal under Tennessee Rule of Appellate Procedure 3(c)(1). 262 S.W.3d 710, 721 (Tenn. 2008). The trial court entered a written order of dismissal, finding that the suppression of the evidence wrought irreparable harm on the State's case. *Id.* The Tennessee Supreme Court concluded that "[t]his order is a final order," and that the State's notice of appeal, filed within thirty days of the written order, was accordingly timely. *Id.*; *see also State v. Rockwell*, 280 S.W.3d 212, 213-14 (Tenn. Crim. App. 2007) (concluding that the State's notice of appeal should have been filed within thirty days of the trial court's written order dismissing the presentment).

While the State asserts that the uniform judgment documents rather than the written order began the time for appeal, it does not cite to any authority for the proposition that the written order was not effective when filed or that uniform judgment documents were required to effect the dismissal. When a defendant is found guilty, a "judgment should be prepared for *each conviction*." Tenn. S. Ct. R. 17 (emphasis added). Judgments of conviction must be filed within thirty days after the defendant is sentenced. T.C.A. § 40-35-209(e)(1). The use of the uniform judgment document is required "for each criminal case resulting in a conviction." T.C.A. § 40-35-209(f).

- 7 -

Likewise, when a defendant is granted judicial diversion, "[t]he district attorney general shall complete and file the order … within 30 days of the granting of diversion." Tenn. S. Ct. R. 17A(1). The responsibility of making sure the judgment forms are filed includes the responsibility of making sure they bear a file-stamped date. *State v. Bobby Lee Allen Robinette*, No. E2014-01688-CCA-R3-CD, 2015 WL 4745065, at *3-4 (Tenn. Crim. App. Aug. 11, 2015). If a defendant "is found not guilty or for any other reason is entitled to be discharged," Tennessee Rule of Criminal Procedure 32(e)(3) requires that the court enter a "judgment" reflecting that fact.

In this case, the trial court, at a hearing held on April 19, 2018, granted the Defendant judgment of acquittal on three charges and judicial diversion on three charges. A written order reflecting that the Defendant was granted judgment of acquittal on three counts was signed by the trial court and filed on May 16, 2018. The uniform judgment documents reflecting the orders of diversion and the judgments of acquittal were filed on June 18, 2018. We conclude that, as in *Meeks*, the written order granting judgment of acquittal, signed by the trial judge and file-stamped on May 16, 2018, "is a final order." *Meeks*, 262 S.W.3d at 721; *see State v. Ruby W. Graham*, No. M2012-00674-CCA-R3-CD, 2013 WL 2311049, at *4 (Tenn. Crim. App. May 28, 2013) (concluding that the first, rather than second, written order signed by the court and filed with the clerk began the period for filing the notice of appeal). Accordingly, the time for filing the State's notice of appeal began on May 16, 2018, and the State's notice of appeal filed on July 3, 2018, was not timely.

This court may waive a timely notice of appeal in the interest of justice. Tenn. R. App. P. 4(a). Waiver of the notice requirement is not automatic, and this court bears in mind that reflexively granting waiver would render the timely notice requirement a "legal fiction." *Rockwell*, 280 S.W.3d at 214. "'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" *Id.* at 214 (quoting *State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). "[T]he … proper and efficient practice for a party seeking a waiver of the timeliness of the notice of appeal is to file a motion with this court requesting the waiver pursuant Tennessee Rule of Appellate Procedure 4(a)." *Id.* In this case, the delay appears to be attributable to the fact that both a written order and uniform judgment documents were filed dismissing the charges and to the State's mistaken belief that the uniform judgment documents began the time for filing a notice of appeal. The notice was filed within thirty days of the filing of the uniform judgment documents. The underlying issue presented for review involves a trial court's legal interpretation of the statutory elements of a crime. The State has not requested waiver of the timeliness of the notice of appeal. While the State's failure to request waiver weighs against granting waiver, *id.*, we determine that the nature of the

delay and the importance of the underlying issue weigh in favor of granting a waiver of the timely notice of appeal. Accordingly, we proceed to review the issue raised by the State.

## II. Nature of a Benefit under the Official Misconduct Statute

The trial court granted the Defendant judgments of acquittal based on its interpretation that the official misconduct statute required any benefit to be a benefit personal to the Defendant. *See* T.C.A. § 39-16-402. The State appeals, arguing that the trial court was mistaken in concluding that the statute required the benefit to accrue to the Defendant.

If the evidence at trial is insufficient to sustain a conviction, a trial court may enter a judgment of acquittal. Tenn. R. Crim. P. 29(b). This judgment may be rendered at the close of the State's proof or at the close of evidence, and it may be rendered before or after the jury's verdict. *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). In deciding a motion for judgment of acquittal, the trial court must determine the legal sufficiency of the evidence. *State v. Collier*, 411 S.W.3d 886, 892 (Tenn. 2013). "The standard by which the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction." *Little*, 402 S.W.3d at 211. Accordingly, the trial court must take the strongest legitimate view of the State's proof and draw all reasonable and legitimate inferences in favor of the prosecution. *Finch v. State*, 226 S.W.3d 307, 317 (Tenn. 2007). If any rational trier of fact could have found the essential elements of the offense, then the motion for judgment of acquittal should be denied. *Id.* at 318. The trial court must consider only the legal sufficiency and not the weight of the evidence. *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). The decision to grant a judgment of acquittal is a question of law which we review de novo. *See Little*, 402 S.W.3d at 211.

The State asserts that the statute does not limit the nature of the benefit to one which is personal to the accused and that this court has previously concluded in *State v. Brewer*, 945 S.W.2d 803, 807 (Tenn. Crim. App. 1997), that the benefit may accrue to a third party. The Defendant replies that the benefit in *Brewer* essentially accrued to the defendant due to a close familial relationship and that this case is analogous to *State v. Allan Pope*, No. E2011-01410-CCA-R3-CD, 2012 WL 4760724, at *15 (Tenn. Crim. App. Oct. 5, 2012), where this court reversed the conviction for insufficient evidence.

As charged in this case, "(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly: (1) Commits an act relating to the public servant's office or employment that constitutes an unauthorized exercise of official power." T.C.A. § 39-16-402(a)(1). The Defendant notes that the

Legislature included a reference to third parties in describing harm but omitted it in describing benefit, and he argues that the benefit must accordingly be to the Defendant personally.

Issues of statutory construction present questions of law that this court reviews de novo without a presumption of correctness. *State v. Edmondson*, 231 S.W.3d 925, 927 (Tenn. 2007). This court should give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008). "Penal statutes are to be construed giving fair import of their terms in a way which promotes justice and effectuates the objectives of the criminal code." *Id.* (citing T.C.A. § 39-11-104). "Every word in a statute 'is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature.'" *Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009) (quoting *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005)). When the language of a statute is clear and unambiguous, this court "must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language and, in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009) (*Overstreet v. TRW Commercial Steering Div.*, 256 S.W.3d 626, 630 (Tenn. 2008)).

While the statutory language of the subsection does not in itself clarify the nature of the required benefit, a broader survey of the Tennessee Code reveals that the term "benefit" has been legislatively defined. Under the "General Provisions" section of Title 39, "(a) As used in this title, unless the context requires otherwise: (1) 'Benefit' means anything reasonably regarded as economic gain, enhancement or advantage, including benefit to any other person in whose welfare the beneficiary is interested." T.C.A. § 39-11-106(a).

When a particular statutory provision does not contain a definition for a term, we may look to the broader statute for a definition. *See State v. Smith*, 495 S.W.3d 271, 274 (Tenn. Crim. App. 2016) (in searching for a definition, examining the particular statute, in the part in which the statute appeared, the general definitions of Tennessee Code Annotated section 39-11-106, and finally a subsection of the part addressing construction in the general provisions of the title). When a term's definition "is announced to apply generally to the entire Criminal Code," this court will "yield to the plain meaning of the language used and its statutorily defined meaning." *State v. Pendergrass*, 13 S.W.3d 389, 394 (Tenn. Crim. App. 1999).

In this case, the benefit is not required by statute to accrue to the Defendant but may benefit "any other person in whose welfare" the Defendant has an interest. We take

this opportunity to clarify that whether the Defendant "is interested" in the welfare of a third party for whom a benefit is obtained is a question for a properly instructed jury.[2] T.C.A. § 39-11-106(a)(1).

We note that reading the statute to allow the benefit to accrue to a third party in whose welfare the accused is interested is in keeping with prior decisions of this court. In *Brewer*, this court upheld the defendant's conviction when he ordered his subordinates to alter a police report in favor of his nephew's wife. *Brewer*, 945 S.W.2d at 807 ("The incremental changes in the report clearly benefited Ms. Brewer, the defendant's close relative."). We observe that in *Brewer*, there was also evidence that the defendant himself obtained a benefit because the intervention was aimed at getting "'that woman off his back.'" *Id.* at 806. In *Allan Pope*, this court observed that the jury "must not necessarily find that another actually received the benefit, only that the public servant intended another to receive a benefit." *Allan Pope*, 2012 WL 4760724, at *15. This court ultimately concluded that the evidence that the defendant intended to confer a benefit on another was insufficient based on the fact that he believed he was digging the ditch for a nearby city which had historically reimbursed the county for road work and that he refilled the ditch when he discovered that a private party would be installing the water lines. *Id.* at *15-16. In *State v. Bobby Gene Keck*, this court likewise upheld convictions for official misconduct when the benefit accrued in one count to the defendant's wife and in another count to four unrelated citizens. No. 01C01-9401-CC-00017, 1997 WL 254228, at *20-21 (Tenn. Crim. App. May 16, 1997). We note further that other jurisdictions with similar laws have concluded that the benefit need not be personal to the defendant. *See, e.g., State v. Brady*, 172 A.3d 550, 562 (N.J. Super. Ct. App. Div. 2017), *perm. app. denied*, 177 A.3d 109 (N.J. 2017) (concluding that the argument that the benefit did not accrue to the defendant was meritless because the term benefit was defined to include a benefit to another in whose welfare the defendant is interested); *State v. Rodda*, 642 P.2d 364, 365-66 (Or. Ct. App. 1982) (concluding that legislature's decision to delete language limiting the benefit to a personal benefit along with statutory definition that the benefit could be to a third party supported a broader reading of the statute); *see also* Model Penal Code § 240.0(1) (defining benefit to include a benefit "to any other person or entity in whose welfare [the beneficiary] is interested"); *People v. Feerick*, 714 N.E.2d 851, 857 n.6 (N.Y. 1999) (listing jurisdictions with similar official misconduct statutes).

Accordingly, we conclude that the trial court erred in granting judgments of acquittal on the basis that the benefit in question was not a personal benefit to the

---

[2] The record on appeal does not contain the jury instructions. However, we recommend the Tennessee Pattern Jury Instructions Criminal Committee review the existing instructions to ensure consistency with this opinion.

Defendant. We reverse the granting of judgments of acquittal on this basis and remand the case for further proceedings.

## CONCLUSION

We conclude that the trial court erred in finding as a matter of law that the benefit was required to be accrued to the Defendant. Upon remand the trial court should reconsider the Rule 29 motion for judgment of acquittal in light of the definition of "benefit" as reflected in this opinion.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE