FILED

12/05/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville June 25, 2019

**STATE OF TENNESSEE v. KAYLA DANIELLE SKILLERN**

**Appeal from the Circuit Court for Wayne County**
**No. 16044     Stella Hargrove, Judge**

**No. M2018-01718-CCA-R3-CD**

The Defendant, Kayla Danielle Skillern, was convicted by a Wayne County Circuit Court jury of the sale of 0.5 gram or more of methamphetamine. *See* T.C.A. § 39-17-434 (2018). She received a sentence of ten and one-half years' confinement. On appeal, she contends that (1) the evidence is insufficient to support her conviction, (2) the trial court erred in denying her motions for a judgment of acquittal, and (3) the trial court erred in admitting video evidence depicting the Defendant arguing with her codefendant in front of a child. We affirm the Defendant's conviction but remand the case to the trial court for the entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed,**
**Remanded for Entry of Corrected Judgment**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Kayla Danielle Skillern.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Brent Cooper, District Attorney General; and Beverly White, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arose from a drug transaction involving the Defendant, another individual, and a confidential informant. The Wayne County grand jury indicted the Defendant for one count of possession with intent to sell 0.5 gram or more of methamphetamine. Prior to the trial, the indictment was amended to one count of the sale of 0.5 gram or more of methamphetamine.

At the trial, Wayne County Sheriff's Investigator Dusty Malugen testified that when investigating drug activity, he sometimes utilized a confidential informant (CI). He testified that a CI would call him, identify a potential seller, and explain which drugs were available for purchase. Investigator Malugen stated that he did not control from whom a CI bought drugs and that he investigated whoever sold drugs to a CI. Investigator Malugen said his practice was to meet with a CI, search the CI, and search the CI's vehicle. Investigator Malugen explained that the search ensured that a CI did not have any drugs. He explained that after searching a CI, he would give the CI a recording device.

Investigator Malugen testified that he met the CI involved in this case after the CI told him that the CI could set up a drug transaction by calling the Defendant. Investigator Malugen said that he picked up the CI in an unmarked police car and that the CI called and spoke to the Defendant and turned on the phone's speaker. Investigator Malugen explained that he was familiar with the Defendant and recognized her voice. Investigator Malugen said that the CI informed the Defendant that the CI wanted to purchase drugs and that the Defendant agreed to meet at the CI's house. Investigator Malugen said that he drove the CI to a location where they met Investigator Retherford. Investigator Malugen explained that he gave the CI two recording devices and $100 with which to purchase one gram of methamphetamine.

Investigator Malugen testified that after setting up the recording devices, he drove the CI to the CI's home. Investigator Malugen said he did not enter the home and had never been in the home. Investigator Malugen stated that after he dropped off the CI, he drove to a nearby park. Investigator Malugen said that he waited at the park until the CI called to inform him that the drug transaction was complete. Investigator Malugen said that he drove to the CI's house, that he picked up the CI, and that the CI gave him the purchased drugs. Investigator Malugen said he retrieved one of the recording devices and paid the CI $130.

On cross-examination, Investigator Malugen testified that, based on his review of the video recording, the Defendant did not hand the CI any methamphetamine. Investigator Malugen said that codefendant Ashley Risner handed the methamphetamine to the Defendant. Investigator Malugen said that the CI called the Defendant, requested drugs, and scheduled a meeting at his home. Investigator Malugen testified that "a gram is always a hundred dollars" and that he did not remember if the CI and the Defendant discussed the price for the drugs.

The CI testified that he knew the Defendant and that he met with her on September 21, 2016. The CI explained that he was working with Investigator Malugen and that he called the Defendant in order to purchase one gram of methamphetamine. The CI said he arranged during a phone call to have the Defendant come to his home for the drug transaction. He said that during the call, the Defendant informed him that a

gram of methamphetamine cost $100. The CI said that after he set up the meeting with the Defendant, he informed Investigators Malugen and Retherford about the plan. He said that Investigator Malugen searched him and gave him $100 to purchase the drugs. The CI explained that Investigator Malugen gave him two recording devices and took the CI home to wait for the Defendant. The CI said that one recording device was a phone, which he held, and that the other was a coffee thermos, which he sat on a coffee table. The CI said that he waited for approximately thirty minutes for the Defendant to arrive. He said that during this time he called the Defendant and asked her when she would arrive.

The CI testified that the Defendant arrived with the codefendant and that the codefendant drove the car. The CI said he went outside to greet the two women, who were arguing. He said that the codefendant's three-year-old child was in the backseat of the car. The CI stated that they all went into his home, that the Defendant took the child into a back room, and that he and the codefendant went into the living room. The CI explained that the codefendant asked for a set of scales, which he provided. He said that the codefendant retrieved the drugs from her purse, weighed the drugs, and handed him the drugs in a bag. The CI said he placed the money on the coffee table in front of the codefendant but that the codefendant did not pick up the money.

The CI testified that, during the transaction, the Defendant was approximately fifteen feet away. He said that his house was small and that he could see the Defendant from his location. The CI said that after he placed the money on the table, the Defendant and the codefendant's child came into the living room. The CI said that he removed the money from the table and that they walked outside together. The CI said that once they were outside, he gave the money to the Defendant. The CI stated that Investigator Malugen came to the house and picked him up. The CI said that Investigator Malugen drove him to a different location, where he gave Investigator Malugen the drugs and a recording device.

A video recording was played for the jury. In the recording, the CI was in his home and made two phone calls. The Defendant and the codefendant arrived in a car, arguing. The CI walked outside to greet the two women, the women ceased arguing, and they went into the CI's home. The Defendant took the child into a separate room and waited outside the room in a hallway. The codefendant weighed and handed a substance to the CI, who placed money on the coffee table. They left the house, and, once outside, the CI handed money to the Defendant.

Tennessee Bureau of Investigation (TBI) Special Agent Ella Carpenter, an expert drug analyst and forensic scientist, testified that she analyzed the substance in this case. She concluded that it was 0.63 gram of methamphetamine. Her report was received as an exhibit.

Upon this evidence, the jury convicted the Defendant of the sale of 0.5 gram or more of methamphetamine. This appeal followed.

## I. Sufficiency of the Evidence and Motions for a Judgment of Acquittal

The Defendant contends that the evidence is insufficient to support her conviction for the sale of 0.5 gram or more of methamphetamine. In a related issue, she contends that the trial court erred by denying two motions for a judgment of acquittal. She argues that the evidence failed to show that a sale of methamphetamine occurred between her and the CI. The State responds that the evidence is sufficient. We agree with the State.

The standard of review for a trial court's denial of a motion for a judgment of acquittal is the "same standard that applies on appeal in determining the sufficiency of the evidence[.]" *State v. Little,* 402 S.W.3d 202, 211 (Tenn. 2013). In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see State v. Vasques,* 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques,* 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given to the evidence . . . are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall,* 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton,* 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-434(a)(3) provides that it "is an offense for a defendant to knowingly . . . sell methamphetamine." A sale is "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery" of the substance. *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). The sale of methamphetamine is a Class B felony "if the amount involved is point five (.5) grams or more[.]" T.C.A. § 39-17-417(c)(1) (2014).

The record reflects that the CI contacted the Defendant by phone and informed the Defendant that he wanted to purchase one gram of methamphetamine. Investigator Malugen listened to their conversation and recognized the Defendant's voice. After the Defendant and the CI arranged to meet at the CI's home, the CI called the Defendant

again asking when she would arrive. The Defendant accompanied the codefendant to the CI's home. After the codefendant gave the CI the methamphetamine, he carried the $100 payment outside and handed it to the Defendant. *See Holston*, 94 S.W.3d at 511 ("One who accepts payment in exchange for property is involved in a sale.") We conclude that the evidence is sufficient to support the Defendant's conviction for the sale of 0.5 gram or more of methamphetamine. The Defendant is not entitled to relief on this basis.

## II.     Video Evidence

The Defendant also contends that the trial court erred in admitting the portion of the video recording showing the Defendant's arguing with the codefendant in front of the young child. The Defendant argues that the evidence was not relevant and that it was unduly prejudicial. The State responds that the trial court did not abuse its discretion in admitting the portion of the recording showing the Defendant's arguing with the codefendant. We agree with the State.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevancy of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006). Relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

Defense counsel objected to showing the entire video recording. He asked that the recording be redacted to exclude the argument. The argument occurred in front of the codefendant's child, and defense counsel argued that this was not relevant and was unduly prejudicial. The trial court overruled the Defendant's objection, and the recording was played for the jury.

The video recording reflects an argument between the Defendant and the codefendant. Both women shouted and used profanity, and the exchange occurred in front of the young child. The trial court denied the Defendant's objection but gave the following limiting instruction to the jury:

I do want to give you one limiting instruction . . . . But what I want to tell you is that any foul language on the part of the [D]efendant that you might have heard in this video cannot be considered against her during your deliberations in considering this charge.

We conclude that the trial court did not err in admitting the entire video recording. The recording conveyed a relevant part of the transaction by showing that the women arrived together in the same car, showed the nature of the relationship between the Defendant and the codefendant, corroborated the CI's testimony, and showed the complete drug transaction. We also conclude that the recording was not unfairly prejudicial. Moreover, the trial court instructed the jury to disregard the Defendant's profanity. The Defendant is not entitled to relief on this basis.

Based upon the foregoing and the record as a whole, the judgment of the trial court is affirmed. We note that the judgment incorrectly states that the Defendant was convicted of possession with intent to sell 0.5 gram or more of methamphetamine. T.C.A. § 39-17-434 (a)(4). However, the Defendant's indictment was amended before the trial to one count of the sale of 0.5 gram or more of methamphetamine, and the jury convicted her of this charge. Id. § 39-17-434 (a)(3). The case is remanded for the entry of a corrected judgment reflecting the correct conviction offense.

_____
ROBERT H. MONTGOMERY, JR., JUDGE