IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 30, 2021 Session

**STATE OF TENNESSEE v. DOUGLAS E. ALVEY**

**Appeal from the Circuit Court for Rhea County
No. 2016-CR-232   Justin C. Angel, Judge**

———————————————

**No. E2020-00273-CCA-R3-CD**

———————————————

Defendant, Douglas E. Alvey, was indicted by the Rhea County Grand Jury for first degree premeditated murder, vehicular homicide, and leaving the scene of an accident resulting in injury or death.  By motion of the State, the trial court dismissed the charge of vehicular homicide.  A jury convicted Defendant as charged on the remaining counts, and the trial court imposed a life sentence for Defendant's first degree murder conviction and a sentence of two years, to be served concurrently, for his leaving the scene of an accident conviction.  Defendant appeals his first degree murder conviction, asserting that the evidence at trial of premeditation was not sufficient to support his conviction.  Having reviewed the entire record and the briefs of the parties, we conclude that the evidence is sufficient to sustain Defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Clancy J. Covert, Chattanooga, Tennessee, for the appellant, Douglas E. Alvey.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; J. Michael Taylor, District Attorney General; and David Shinn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Evidence presented at trial*

The victim, Walter Hale, was a manager and supervisor at the We Care Thrift Store in Dayton, Tennessee. Mr. Hale's duties included taking donations at the back dock of the store. On September 6, 2016, Mr. Hale was eating lunch in his vehicle parked on the side of the thrift store. Defendant drove his pickup truck behind the store and began unloading furniture in the parking lot. When the victim approached Defendant's vehicle to stop him, Defendant accelerated and struck the victim with his vehicle.

Pamela Debes was working at the thrift store on the day of the incident. She provided police with video recordings from surveillance cameras on the inside and outside of the building. The videos were played for the jury. The videos showed Defendant walking into the store and walking around the furniture department. Larissa Roberts, another store employee, assisted Defendant inside the store by measuring an entertainment center. She testified that Defendant left without purchasing anything and that nothing out of the ordinary happened while Defendant was in the store.

A video of the loading dock area at the rear of the store was admitted into evidence and shown to the jury. The video shows Defendant's white pickup truck drive around the corner of the building, circle around in front of the loading dock, and park facing the same direction from which the truck came. Defendant then exited the truck and threw a piece of furniture out of the bed of his truck onto the parking lot several yards away from where donations were accepted. Defendant got back into his truck and began to drive away. The video shows the victim walk into view from around the corner of the building. The victim walked into the path of Defendant's vehicle, held up his hand, appearing to signal Defendant to stop driving. Defendant continued driving and struck the victim with his vehicle.

A video of the side parking lot of the store shows Defendant's white pickup truck drive around the corner of the building towards the rear of the store. The victim then got out of his vehicle parked on the side of the store and walked towards the rear corner of the building with his arm outstretched. As Defendant's truck came around the corner, Defendant struck the victim, and the victim rolled onto the hood of the truck. Defendant accelerated through the parking lot and turned left onto the roadway, throwing the victim off the vehicle and into some shrubbery across the road.

David West was eating lunch with his wife and daughter at a Krystal fast food restaurant across the road from the thrift store at the time of the incident. Mr. West testified that he saw Defendant's truck leaving the parking lot, and he saw the victim "come around the corner of the building, put his hand up trying to stop the truck that was leaving." The victim was walking towards Defendant's truck, "like he was trying to get whoever was driving the truck to stop." Mr. West testified that Defendant "sped up and hit the [victim], put him on the hood of his truck, and then he c[a]me out of the parking lot, and took a hard

left, and threw the [victim] off the hood." Mr. West estimated that Defendant was driving "20 [to] 25 miles an hour at least" when he turned left out of the parking lot after striking the victim. Mr. West testified that the victim was holding onto the windshield wipers of Defendant's vehicle before being thrown from the vehicle. Mr. West's wife called 911, and Mr. West checked on the victim, who was lying on the ground. The victim had blood coming from his nose and mouth, and he was "kind [of] moaning."

Josh Jordan, a patrol officer with the Dayton Police Department, was off-duty and driving through the drive-thru line at Krystal at the time of the incident. Officer Jordan saw the victim lying on the ground "partially in the roadway . . . on Iowa Avenue and partially in the rock – rock bed, shrubbery area of Krystal." Officer Jordan approached the victim and saw that the victim was "face down in the gravel." Officer Jordan saw "one pretty extensive injury to the back of his head." The victim "wasn't talking, but it was almost like a couple of times he tried to, but [Officer Jordan] couldn't make out anything that he was saying."

The victim died on September 10, 2016, from the injuries he sustained. Dr. Amy Hawes, a forensic pathologist, performed an autopsy on the victim. She testified that the victim had suffered blunt force trauma to his head and had bruising on his brain. The victim had a fracture of his right temporal bone and bleeding around the brain. He also had contusions on his arms and legs, several abrasions, a fractured clavicle, and two rib fractures. Dr. Hawes concluded that the victim's cause of death was "multiple blunt force injuries." Dr. Hawes testified that she initially reported the victim's manner of death as accident, but she subsequently amended the report to classify the manner of death as undetermined "after further investigative information was brought to light[.]" Dr. Hawes explained, "[b]ased on the evidence I had been presented with I did not feel like I could say with a medical certainty that it would be necessarily an accident or a homicide, I felt it was best classified as undetermined."

Matt Rose, the patrol supervisor for the Rhea County Sheriff's Office, determined the path of Defendant's travel after leaving the thrift store by obtaining video surveillance from several business locations in the area. Defendant drove in the opposite direction of his home after leaving the thrift store.

On September 22, 2016, Officer Jordan went to Defendant's residence, a camper parked near other residences. Officer Jordan knocked on the camper door, with no response. He then went to another nearby residence and spoke to an individual there. When Officer Jordan returned to the camper, he noticed that the window was open and the window blinds and screen were pushed through.

Roger England, Defendant's brother-in-law, testified that he lived six miles from Defendant's residence. In the early morning hours of September 23, 2016, Mr. England called the police to report that Defendant was at his residence. He testified that Defendant had left his truck in the parking lot of Lowe's and walked to Mr. England's house. Defendant was "all tore up and crying."

Dayton Police Lieutenant Jeff Hill located Defendant's truck parked at the Lowe's store on Gunbarrel Road. The truck appeared to have newly replaced windshield wipers. Lieutenant Hill noted that the truck had a manual transmission.

At the close of the State's case-in-chief, defense counsel made a motion for a judgment of acquittal, pursuant to Rule 29 of the Tennessee Rules of Criminal Procedure, arguing that the State had presented "no proof whatsoever concerning premeditation." The State argued that the proof showed that Defendant used his vehicle as a deadly weapon and he exhibited calmness after the incident. The trial court denied the motion, concluding that the jury could find from the evidence "that there was some premeditation and that there was plenty of opportunity to stop the course of action, but [Defendant] continued on the course of action. . . ."

Defendant did not testify at trial or present any other evidence.

### Sufficiency of the evidence

On appeal, Defendant challenges the sufficiency of the evidence. Specifically, Defendant asserts that there was insufficient evidence to establish that he acted with premeditation. The State responds that the evidence was sufficient to support Defendant's conviction.

Defendant asserts that the trial court erred by denying his motion for judgment of acquittal at the end of the State's proof because the State failed to establish proof of premeditation. "The standard by which the trial court determines a motion for a judgment of acquittal is, in essence, the same standard that applies on appeal in determining the sufficiency of the evidence after a conviction." *State v. Little*, 402 S.W.3d 202, 211 (Tenn. 2013). Because the standard of review is the same for a challenge to a denial of a motion for judgment of acquittal and a challenge to the sufficiency of the evidence, we will address Defendant's claims together.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This

Court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." *Id*.; *see State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The standard of proof is the same whether the evidence is direct or circumstantial. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "is the same whether the conviction is based upon direct or circumstantial evidence." *Id*. (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this Court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." *State v. Sisk*, 343 S.W.3d 60, 67 (Tenn. 2011).

Premeditated first degree murder is defined as "[a] premeditated and intentional killing of another." T.C.A. § 39-13-202(a)(1). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a).

> "[P]remeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

T.C.A. § 39-13-202(d).

The element of premeditation only requires the defendant to think "about a proposed killing before engaging in the homicidal conduct." *State v. Brown*, 836 S.W.2d 530, 541 (Tenn. 1992). Whether premeditation exists in any particular case is a question of fact for the jury to determine based upon a consideration of all the evidence, including the circumstantial evidence surrounding the crime. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *Bland*, 958 S.W.2d at 660. Our supreme court has held that factors determining the existence of premeditation include, but are not limited to, the following: the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the

defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime; destruction or secretion of evidence of the killing; and calmness immediately after the killing. *See State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003); *Bland*, 958 S.W.2d at 660. Additional factors cited by this Court from which a jury may infer premeditation include the lack of provocation by the victim and the defendant's failure to render aid to the victim. *See State v. Lewis*, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000). Noting that "[p]roof of premeditation is inherently circumstantial," this Court has observed that "[t]he trier of fact cannot speculate what was in the killer's mind, so the existence of premeditation must be determined from the defendant's conduct in light of the circumstances surrounding the crime." *State v. Gann*, 251 S.W.3d 446, 455 (Tenn. Crim. App. 2007).

Defendant contends that the only factor from which the jury could infer premeditation was Defendant's use of his vehicle as a deadly weapon against an unarmed victim. Defendant argues that no proof was presented that Defendant made preparations to kill the victim, made any declarations of his intent to kill the victim to anyone, procured a weapon to kill the victim, or made preparations before the killing to conceal the crime.

The State contends that, in addition to having used his vehicle as a deadly weapon against an unarmed victim, Defendant exhibited calmness immediately after the killing, and the killing was committed with "particular cruelty." The State also points to a lack of provocation by the victim and Defendant's failure to render aid to the victim as additional circumstances to support an inference of premeditation.

Defendant asserts in his brief that he "fled the scene in a panic; therefore, there was no proof . . . concerning the calmness immediately after the killing." Defendant notes that "the total interaction between [Defendant] and the victim lasted no more than 12 seconds." He submits that he "hurriedly tried to leave the premises" when he was confronted by the victim because he knew that he had discarded furniture in an area where no dumping was allowed. Defendant asserts that he made a "split-second decision" to leave, and there was insufficient time to exercise reflection and judgment. We disagree.

Here, the proof of premeditation, although not overwhelming, was sufficient to support a finding of premeditation. The jury could reasonably infer that Defendant saw the victim waving at him to stop and, rather than stop his vehicle, Defendant accelerated through the parking lot, striking the victim. Defendant then continued driving through the parking lot with the victim on the hood of his vehicle until the victim was flung off the vehicle when Defendant made a hard left turn out of the parking lot. Although the incident lasted only seconds, we believe it was sufficient time for Defendant to exercise reflection and judgment. *See* T.C.A. § 39-13-202(d) ("It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time."). The brake lights on

Defendant's vehicle were operable and can be seen in the video when he parks his truck to unload the piece of furniture in the parking lot. From the time the victim appeared from around the corner of the building until Defendant's truck struck the victim and drove out of view of the camera, Defendant never again applied his brakes. Rather, Defendant accelerated the vehicle's speed. Additionally, Defendant failed to render aid to the victim, and the victim did not provoke Defendant. The victim, an employee on his lunch break, merely attempted to stop Defendant from dumping furniture in the parking lot of the store. This evidence was sufficient to support Defendant's conviction.

## CONCLUSION

Based upon the foregoing, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE